## HARRISON, Adm'r., et al., vs. MOCK et als.

1. Where a chancery cause is reversed and remanded by this court for further proceedings, and, upon its return to the court below, a general re-reference of the matters of account is made by the chancellor, the register is not concluded by his previous report, but may state the account anew, and rectify any mistake that may have intervened in the taking of the first account.

2. Where the trustee, in a deed for the benefit of creditors, permits the grantor until his death and his administrator afterwards to retain possession of and to make a crop with the slaves of the trust estate, the admission of the administrator, who sold the crop and received its proceeds, as to the amount of such sale, is not evidence against the trustee.

3. If the trustee, in a deed for the benefit of creditors, improperly permits the grantor in his life-time or his administrator after his death to retain possession of the slaves of the trust estate and receive the proceeds of their labor, without deriving any profit to himself therefrom, the measure of his liability is not the benefit that may have accrued to the grantor or his estate, but the value of the reasonable hire of the slaves.

4. Where a trustee, himself a creditor, accepts from the debtor a deed of trust for the benefit of all his creditors, which provides for their payment "equally and rateably, without any distinction or preference," he thereby agrees to execute the trust according to the provisions of the deed, and to share *pro rata* with the other creditors, should the trust effects prove insufficient for the satisfaction of all.

5. Where all the effects of a trust estate have been converted into money, and the debt constituting a charge upon it ascertained, the decree against the trustee, who is himself a creditor, should be for the balance that remains, after deducting the dividend to which he is entitled, and not for the entire sum found in his hands.

6. R. B. H., the trustee in a deed for the benefit of creditors, without distinction or preference, in answer to a bill filed to enforce the trust, sets up demands to a specific amount as due to him by the grantor at the time of the execution of the deed; after the death of R. B. H., the bill is revived against his administrator, who adopts the answer of his intestate, but subsequently files a supplemental answer, insisting upon an additional claim, to which he alleges his intestate's estate is entitled for money advanced and paid out by his intestate, *since* the execution of the deed and the filing of his answer, on executions against the grantor, which created a lien superior to the deed of trust: *Held*—1st. That payments on executions against the grantor, made by the trustee *before* the date of the deed, are not put in issue by the pleadings, and are properly disallowed. 2d. That the answer of the trustee is an admission of the extent of the debt claimed by him at that time, and is conclusive until amended.

7. A trustee, who, after the acceptance of the trust, in good faith, pays off executions which create a lien on the trust estate, is entitled to be reimbursed the full amount of such payments, but he cannot be allowed to avail himself of executions thus purchased to sell the trust effects.

Error to the Chancery Court of Lowndes. Tried before the Hon. Jos. W. Lesesne, chancellor.

THE bill in this case was filed in June 1841 by the defendants in error, as creditors of William R. Meyer, against him, Richard B. Harrison, et al. to enforce the provisions of a deed of trust executed for the benefit of his creditors generally in April 1840 by said Meyer to the said Harrison. The deed of trust conveyed all the property both real and personal of the debtor and provided that the trustee should take it into immediate possession, expose it to sale as soon as it could be done consistently with the interest of the creditors and appropriate the proceeds to the payment of their debts " equally and ratably without any distinction or preference." Each of the defendants answered the bill, and Harrison, the trustee, insisted that one of the debts due by said Meyer at the time of the execution of the deed, and for which it was intended to provide, was a debt of about $2000, due to himself " by various notes of hand of said Meyer for money advanced, and executions paid by respondent, and judgments assigned to him which

44

are still due." After the execution of the deed and accep-
tance of the trust by him, the said Harrison caused several
executions against Meyer, which he had paid for him and ac-
quired the control of, before the date of the deed, and which
created a lien on the property, to be levied on certain of the
slaves assigned, viz, Aaron, Nancy and child, Hagar and Eli-
za, which were sold by the sheriff, and bid off by said Harri-
son and by him conveyed to the sole and separate use of Mrs.
Meyer. The balance of the property, except the land, which
was sold under judgments, having a lien older than the trust
deed, and two slaves sold under a mortgage, also older than
the deed, were suffered by the trustee to remain in the pos-
session of Meyer, who cultivated with the slaves a plantation
belonging to the said trustee, and received the proceeds of
their labor until his death in 1842 or 1843. In the latter year
the crop was sold and the proceeds received with the permis-
sion of the trustee by Richard K. Harrison the administrator
of Meyer. Subsequently to the death of Meyer, Richard B.
Harrison, the trustee, died, and the bill was revived first
against Richard K. Harrison, and on his resignation, against
Sam'l Gardner, as the administrator of Meyer, and against Kirk-
land Harrison as administrator of Richard B. Harrison, each
of whom answered the bill, and adopted the answers of their
respective intestates. In February 1845, the register, by con-
sent of the parties, took an account of the debts due to the
creditors and made report thereof to the court, the debt due
to Richard B. Harrison being stated in said report at $1989
05, and in July 1845, the chancellor rendered a decree, settling
the equity of the case, and referred to the register the matters
of account against the estate of the trustee. The register re-
ported the sum of $4137 68 due by the estate of the trustee,
after deducting the $1989 05 due it, which report was con-
firmed, and the slaves, including Aaron, Nancy and child,
Hagar and Eliza, the sale of which the chancellor set aside,
were ordered to be sold. A writ of error was sued out to
this court from the decree of the chancellor, and the case there-
on reversed as to some of the matters of account and remanded
for further proceedings. Upon its return to the court below, the
chancellor re-referred the matters of account to the register to
be reported on in accordance with the opinion of this court.

At this stage of the case, the administrator of Richard B. Harrison, by consent of the opposite party, filed what the record calls an amended and supplemental answer, in which he states, that since the execution of the trust deed and since the filing of the original answer of his intestate, his intestate advanced and paid to the plaintiffs and became thereby the owner of sundry executions against William R. Meyer—one in favor of George Walker for $302 17—two in favor of Roper, Reese & Co., one for $70 and the other for $795 77—and two in favor of George Williams, one for $288, and the other for $791, each of which executions created a lien on the trust estate superior to that of the trust deed, and that his intestate thus was, and his estate is a creditor of the said Meyer, to the aggregate amount of said executions over and above the sum claimed in the original answer, and entitled to reimbursement therefor out of the trust fund. The register in taking the account rejected this claim set up in the amended and supplemental answer, it appearing by the proof that the alleged advances or payments on the above executions by said Harrison were made in 1838 or 1839, long before the trust deed was executed. Proceeding then to state the account he charged the estate of the trustee as follows: 1st. Instead of deducting the sum of $1989 05, due the administrator's intestate, as was done in the former report, from the sum of $6126 73 with which the estate was found chargeable, he reported the last named sum with interest as due by the estate, and the first named sum as due to it and constituting a charge on the trust fund: 2d. The slaves Aaron, Nancy and child, Hagar and Eliza not having been delivered to the register in accordance with the decree, he charged their value against the estate of the trustee, to wit, $3348 with interest: 3d. He charged the estate of the trustee with the proceeds of the crop of 1843, received by Richard K. Harrison as administrator of Meyer, amounting to $1100 as admitted by said Richard K. to Samuel Gardner, and which admission was the only evidence thereof. These several sums with interest make the aggregate sum of $12,260 79. The defendants filed the following exceptions to the register's report: 1st. That he had no authority to alter his former report by changing the amount of $4137 68 therein found due, to $6126 73. 2d. That he should

not have charged the estate of the trustee with the value of the crop of 1843. 3d. That he should have credited the estate with the sum of $1989 05, the amount ascertained to be due it. 4th. That he should have allowed the additional credit claimed in the amended and supplemental answer. Each of these exceptions was overruled by the register and confirmed on appeal by the chancellor, who thereupon rendered a decree, directing the administrator of Richard B. Harrison to pay the said sum of $12,360 79 into the hands of the register in ten days after the service of a copy of the decree, and in default therein, that execution issue, &c. These several matters are now assigned as error.

J. M. BOLING, for plaintiff in error :

1. The register erred in sustaining the first exception of defendants to his report by which he charged the administrator of R. B. Harrison with $6126 73 and interest from 18th July 1845, instead of $4137 68, thereby altering his report of July 1845, which had been confirmed, and when this part of the case was not refered to him. 2d. He also erred in charging the administrator of R. B. Harrison with $1100 and interest from 1st January 1844, being the amount of the cotton crop of 1843, when there was no decree against the administrator of R. B. Harrison, or against R. K. Harrison the administrator of Myer, who made and sold the crop of 1843, or any allegations to sustain one. 3d. The register erred in not allowing the administrator of R. B. Harrison a credit for the money he paid for the slaves Hagar, Aaron, Eliza, Nancy and her child, and in refusing him the further credit of $1,989 05, with interest from July 1845, the latter amount having been allowed him by a report of July term 1845, which had been confirmed. 4th. R. B. Harrison had a right and his administrator has the same, to retain his debt in preference to all other creditors.—Toller's Law of Ex'rs 295; 1 Lomax on Ex'rs 412 to 418. An executor who is a creditor of the estate, or an heir, or an distributee, has the right to retain to the amount of his debt.—1 Des. 247; Pordom v. Tipton, et al. 9 Ala. Rep. 914; Fonb. Eq. b. 4, pt. 2, ch. 2, § 4, and note; Devessey v. Devessey, 3 Russ. 287, 542; 1 Eq. Dig. 498, § 13; Peter v. Beverley, 10 Peters, 532; 2 Peters' Digest, 277,

§ 30; 7 Dana's Rep. 457. 5. The chanceller erred in confirming the register's report and in overruling the exceptions of the administrator of R. B. Harrison to the same.—See authorities, *supra.* 6th. This court was in error in point of fact when this case was here before, in supposing the executions under which Hagar, Aaron, Eliza, Nancy and child were sold did not have liens older than the deed of trust—Harrison, et al. v. Mock, et al. 10 Ala. Rep. 195; and it erred in its dictum, in supposing that R. B. Harrison waived his lien in accepting the trust.—Hawly v. Mancius, 7 Johns. Ch. is founded upon a statute peculiar to New York; see 2 Kent's Com. 401; N. York Revised Statutes, vol. 2, p. 36, 46. The case of Rogers v. Rogers, Hop. Ch. 523, does not sustain that position, and all the authorities sustain the position that an executor or trustee may pay off liens on the trust property and retain the amount of his payments.—See the authorities, *supra*—see also Matthews et al. v. Dragard, et al. 3 Des. 25.

T. & J. WILLIAMS, *contra.*

CHILTON, J.—When this case was before this court at a previous term, (see 10 Ala. Rep. 185) the principles which should govern its final disposition, were very fully declared, and the decree of the chancellor confirming the report of the register was reversed, and the cause remanded that further proceedings might be had in conformity with the opinion then delivered.

The effect of that reversal was to open the previous report of the register, and when the chancellor afterwards re-refered to him the matters of account, to report upon the same in conformity to the decision of this court, it was entirely proper that he should take into the account every matter properly embraced in the pleadings. It follows then, that the register was not concluded by any matter contained in the first report, and was authorised under the order of reference, which was general, and the propriety of which is not questioned by the errors assigned, to state the account anew, rectifying any mistake which had intervened in taking the first account, and charging the plaintiff in error with the proceeds of the crop of 1843, if the proof showed that such proceeds were properly

a portion of the trust effects. Goodwin, et al. v. McGehee, et al. 15 Ala. Rep. 223-251-2; Kirkman v. Vanlier, 7 Ala. Rep. 217.

As to the allowance of $1100, the price of the crop of 1843 sold, as is alleged, by the administrator of Meyer, we do not find in the record sufficient proof to sustain it. It appears that Meyer, after the execution of the trust deed, retained the slaves, and cultivated one of the plantations of Richard B. Harrison, but whether the crop of 1843 was raised on this, or other lands, does not appear. Be this as it may, the only proof of the value of the crop is made by Gardner, who states that Richard K. Harrison told him, that the proceeds of the crop of cotton made by the negroes for the year 1843, and sold by him as administrator, was eleven hundred dollars. This would be proper evidence as against Richard K. Harrison, but certainly cannot be received as sufficient to fix upon the estate of Richard B. Harrison, the trustee, a liability to that extent; as to him, it must be regarded as the declaration of a mere stranger. There is no doubt of the correctness of the proposition, that if the trust property was permitted by the trustee to remain with the administrator of Meyer, he would be as much bound to account for its reasonable profits as though Meyer himself had retained it, and the proof is sufficient to show that Richard K. Harrison administered at the request of the trustee, who was the only security upon the bond, and that the slaves were retained by his permission. The estate of the trustee, under such circumstances, should be liable for their reasonable hire, but not for the value of the crop that was raised upon the trustee's land, for this would be to charge him with the proceeds of his own estate, which would be manifestly unjust, although he may have conferred upon Meyer, or his administrator, the right to cultivate it gratuitously. There is no principle better settled than that a trustee can make no profit to himself from the trust, and if he invest the trust funds, the *cestui que trust* may elect to take the profits or hold him accountable for the fund with the interest; but if he wrongfully deliver the trust effects to a third party, and derive therefrom no profit, the measure of his liability is not the benefit which may have accrued from accidental intervening causes to such third party, but the profits which

should have accrued by the exercise of proper diligence over the effects by the trustee. ·

We think the register very properly reported the sum of $1989 05 as due the trustee, and as a charge upon the trust effects. The first report, which deducted this sum from the amount in the hands of the trustee, was clearly erroneous, as the effect of such deduction was to allow the trustee, whose demand was placed by the deed on the same footing with those of the other creditors, full satisfaction of his claim, whereas they must have shared *pro rata* the residue of the fund which is inadequate to the payment of all the claims. The trustee by the acceptance of the trust, agreed to execute it according to the provisions of the deed, which gave him no preference over the other creditors. But although he was not entitled to preference they have no right to enforce the collection from him of the portion which is due to him, and which the court would order to be refunded as soon as collected. This would not only be useless, but oppressive, and no reason exists why it should be done. The effects, which remained in specie, have been sold, and the decree against the administrator is for a sum *in numero*, to be paid to the register of the court for distribution. The entire amount of the debts which constitute a charge upon the fund having been ascertained, as well as the amount to be apportioned between the creditors, it is quite as practicable to determine before, as after the collection, what sum is due to each, and thus relieve the estate from paying into court money which is to be refunded.—See Nelson & Hatch v. Dunn, et al. 15 Ala. Rep.

The register very properly disallowed the claims set up by the amended and supplemental answer of Kirkland Harrison as administrator of R. B. Harrison. The proof shows the payments, which are avered in the answer to have been made since the filing of the bill, were in fact made long before the deed of trust was executed. These demands, if indeed they are different from those which are mentioned in the original answer of R. B. Harrison, are not put in issue by the pleadings. If, as the proof shows, the executions specified in the supplemental answer were paid in 1838 or 1839, the defendant while living or his representative after his death should have obtained permission to amend the answer, so as to insist

upon them. This has not been done. But they are set up as supplemental matter, occuring since the filing of the bill, and since the answer of said defendant was filed. The answer of Richard B. Harrison, which proposes to set up all the claims due from Meyer to him at the time of filing it, is conclusive upon him until it is amended, being, as was said by this court in the former opinion, "an admission of the extent of the debt at that time." 10 Ala. Rep. 195.

In respect to the right of the trustee to retain for his own debt to the full extent of his demand, as also, with regard to the lien of the executions which Richard B. Harrison had paid before the deed was executed, it is unnecessary that we should say any thing, as the former opinion is conclusive upon these points. The acceptance of the trust by him, as we have before said, is a waiver of his lien then existing, and he has no right to retain except for the proportion of the fund to which upon a just distribution of it, he would be entitled. If he has in good faith discharged liens upon the trust property since the execution of the deed, which liens existed in favor of others, as such payment would be for the benefit of the *cestuis que trust*, he would be entitled to be re-imbursed from the trust fund the full amount of such payments; but the proof fails entirely to bring him within this category. If, however, the proof was sufficient, he could not be allowed to avail himself of the executions thus purchased, to sell the trust effects. This would be to allow him to purchase for his own benefit, and to set up the interest in opposition to the trust, which a trustee may not do.—See McKinley v. Irwin, 13 Ala. Rep. 681.

For the error above noticed, the decree must be reversed so far as it requires the administrator to pay into court the amount to which he is entitled out of the funds of the estate, and as to the crop of 1843, but as to all other matters, the same is affirmed. Let the cause be remanded, that an account may be taken of the profits of the estate in the year 1843, and that the amount due the administrator being deducted, the remaining sum may be paid into court, or executions issued therefor.

Let the plaintiffs in error recover the costs of this court.