## LIABILITY OF ASSIGNOR FOR RENT FOR ASSIGNED REAL ESTATE.

Common Pleas Court of Richland County.

ASSIGNMENT OF MINNIE E. MCCRAY.

Decided, January Term, 1909.

*Assignments for the Benefit of Creditors—Assignee not Chargeable for Rent of the Real Estate Assigned, When.*

It is the business of an assignee to sell and not to let the premises assigned, and where the assignor continues to occupy the assigned property as a dwelling and makes some repairs, and no rent was collected from him, and the assignee was reasonably expeditious in effecting a sale of the property, he is not chargeable for rent for the period the property was in his hands.

*Jenner & Weldon,* for exceptors.

*T. Y. McCray, Jr.,* for the assignees.

WICKHAM, J.

These cases are submitted on exceptions to the separate accounts of H. E. Bell and T. Y. McCray, Jr., as assignees of Minnie E. McCray. The facts are agreed upon and are as follows:

On the 17th day of October, 1902, Minnie E. McCray made a general assignment of all her property for the benefit of her creditors to H. E. Bell and T. Y. McCray, Jr. A part of the property assigned was a tract of land of a little more than one acre in extent, which was located 2,000 feet from the corporation line of the city of Mansfield, and 500 feet from the main road, but on a side street called Linden road; on this tract was located a house of twelve rooms, a stable, and some fruit trees. At the time the assignment was made the premises were occupied by the assignor; her father, T. Y. McCray, Sr., and her brother, one of the assignees, T. Y. McCray, Jr., as their family residence. T. Y. McCray, Sr., T. Y. McCray, Jr., and the assignor constituted their family. They continued to reside in the same place for more than one year after the date of the assignment.

No rent was ever paid by the assignor to the assignees, and no agreement was ever made between the assignor and the assignees, or any of the occupants of the premises, for rent. The taxes and repairs were paid out of the assigned estate, except about $15 which was paid by the assignor for incandescent light fixtures and $12 for the papering of three rooms. That the assignees kept the property insured during the time; that the fair rental value of the premises was $20 per month.

On the same day that the assignment was made, to-wit, October 17, 1902, a petition was filed by the assignees in the Probate Court of Richland County for the sale of the real estate assigned, and an order of sale was issued November 29, 1902, for the sale of the premises in question. It is further alleged that the premises in question were re-appraised three times; that the order of sale was outstanding as much time as was legally possible for the sale of said premises; that Mrs. John Prescott, who filed the exceptions in this case, had a first mortgage lien for $4,600 on the premises in question, and that the proceeds realized from the sale of the premises were applied on the payment of her claim, but were not sufficient to pay the whole claim, and that there is a considerable balance due her, and that the note of Mrs. John Prescott was due before the deed of assignment was filed; that T. Y. McCray, Jr., one of the assignees, was personally interested in the sale of the premises, outside of his position as assignee, and that $4,000, the price it finally sold for, was a good price for the property, situated as it was and under the circumstances.

The exceptor claims that the assignees should be charged with the fair rental value of the premises, which it is agreed was $20 a month, for the time which elapsed between the date of the assignment and the date of sale; that notwithstanding the assignees received no rent, and no agreement was made with them to pay rent, they should charge themselves in their account with the reasonable rental value of the premises.

I think the claim of counsel for the exceptor that if the assignees had let the premises and received rent therefor, they should be charged therewith, might be conceded to be correct,

but in this case the premises were not let and the assignees re-
ceived no rents, and these facts present a different question. ·  ·

. The authorities cited by counsel for the exceptor are· all dis-
· tinguishable from the case before us.           .  .        .:  ;

, In· Rockel's work, wherein the author says "If a guardian.
· occupies a ward's lands he is liable. for the rents," involves: a
different principle.   If a guardian occupies his ward's lands and
receives its issues · and profits, good conscience would require
him to· account to his ward therefor.        :  ·      . . . ·.\ ·,

Counsel cite the case of *Harrison* v. *Mock*, 16 Ala., 616; where
it is held that the trustee in a deed for the benefit of creditors
is liable for the reasonable hire of slaves which he permits ·the
assignor to retain and use.   In that case the assignor· had the
value of the labor of· the slaves;  their labor created property,
which the assignee permitted the assignor to retain against the
rights of the creditors, and the court no doubt held the as-
signee to the rule that he should account for the reasonable value
of the labor of the slaves, for the reason that their labor might
have been employed by others, for ;which a valuable considera-
tion would have been paid and thereby inure to the benefit, of
creditors.                          .  .   .    . .·. ·.          .·.

. The case before us is different in this, the assignees' had no
authority to let the premises assigned;  the statutes give no. such
authority.   It· is the duty of an assignee to immediately convert
. the property assigned into money, and to proceed with all rea-
sonable dispatch through the probate court to distribute the
. .;proceeds to the creditors of the assignor.   The assignees in this
·case attempted to do that;  the petition was filed on the same
day of the execution of the deed of assignment, and an order
of sale was isued by the probate court at the earliest possible
day, about one month after the filing of the petition.   The prop-
erty was appraised three times and every effort made by. the
assignees to sell it.                     .  .   ·  ·    ·.

If we assume that the assignees had authority to let the
premises, it would not follow by any means that they could find
a renter.   No one would be likely to rent property that; they
might be compelled to vacate in a very short time after., The

assignees were bound to sell the property at the earliest day, and they could have given no renter any assurance that he would be permitted to remain in the property any definite length of time.  Nor does it help the case to say that the assignor should have vacated the premises.  It appears that the assignees kept the property insured, and it was to the interest of the creditors that the house was occupied.  It may not be going too far to assume that there is greater danger of fire to a vacant house than to one which is occupied, and that insurance policies generally provide for a release of liability if the building insured becomes vacant, and it is for that reason we say that the occupation of the house and barn was in the interest of the creditors.

In *Ely et al* v. *Turpin*, 75 Mo., 83, cited by counsel for the exceptor, we find the second paragraph of the syllabus to read: "If a trustee for the benefit of creditors permits the debtor to take the rents and profits of the trust land, he will be held personally liable for their value, less taxes and the cost of repairs and necessary improvements, but without rests."

In this case the assignee permitted the assignor to collect rents, and the asignee was held liable to account for them. This rule is obviously just.

In *McCune* v. *Hartman Steel Co.*, 87 Ill. Appeals, 162, it was held that "an assignee who collected only a part of rents due his assignor, when he could have collected all of them, must be charged on settlement with the difference between the amount collected and the amount he should have received."

Counsel for the assignees cite the only case that has been called to our attention or that we have been able to find that is in point, *Detwiler's Appeal*, 96 Pa. St., 323, the syllabus of which reads:

"A voluntary assignment for the benefit of creditors does not impose upon the assignee any duty to let the real estate, and where an assignee permits the assignor to remain in possession and use the real estate, he is not chargable with the rental thereof."

The assignee is a mere instrument through whom the property is administered for the benefit of creditors.  He has no title to

the property assigned, except for the purposes of the administration. He represents the interests of the creditors; upon him is enjoined the duty of converting the property into money without unnecessary delay, and distributing the proceeds to the creditors of the assignor. No duty is imposed upon him to let the real estate. In the very nature of his relation to the property he could not do so. The manifest intent of the law is to give a power of sale and not a power to let, and it is not the purpose of the law to give the assignee authority to work land or let it to others.

Something was said by counsel in argument about the fact that T. Y. McCray, Jr., one of the assignees, occupied the premises with the assignor, and that he therefore received a benefit from the occupation of the premises, and therefore is chargeable with rents; but it further appears from the facts that he, with the assignor, his sister, and T. Y. McCray, Sr., his father, constituted the family. If to remain a member of the family would charge T. Y. McCray, Jr., with rents, it would be necessary for him to resign as assignee or leave home to escape the payment of the rental of the value of the property. The law will not sustain the rule suggested.

The judgment of the court is that the exceptions to the account of H. E. Bell and T. Y. McCray, Jr., assignees, should be overruled, with exceptions.