## LEGRO *vs.* LORD *&* *al.*

A creditor cannot, in legal contemplation, be defrauded by the *mere* conveyance by his debtor of property which by law is exempt from attachment.

A legal tender within the time prescribed by law, of the amount for which an equity of redemption is held under an execution sale, is sufficient to revest the property without a deed of conveyance from the purchaser.

If one who had been the owner of an equity of redemption which was taken and sold on execution, should before the expiration of a year from the sale, without consideration, convey to a son the right to redeem, and by a fraudulent arrangement between them, should furnish the means and cause the equity to be redeemed, and held in the name of the son for the benefit of the father, with the further purpose of redeeming the estate from the mortgage to be held in like manner — the creditor of the father might avail himself of the fraud by a subsequent attachment and sale of the equity of redemption — as the payment or tender of payment by the son, under such circumstances would by operation of law, immediately revest the estate in the father.

THIS was a *writ of entry*, in which the demandants claimed the possession of a certain farm in *Lebanon.* It was admitted that *Benjamin Lord*, one of the defendants, owned the farm, on the 15th *day of July*, 1828; at which time he conveyed the same in mortgage to *Messrs. Hayes* and *Cogswell.* And the demandant claimed title by virtue of the sale of the equity of redemption, made on the 25th *day of December*, 1830, under an execution duly issued on a judgment in favour of *John A. Burleigh* against *Benjamin Lord*, the demandant, being the purchaser under such sale.

To avoid the effect of the foregoing, the defendants shew a sale of the same equity of redemption, to *Aaron Maddox*, on the 15th *day of April*, 1829, on an execution duly issued on a judgment in favour of *Jonathan L. Pierce* against *Benjamin Lord* — a deed of the same equity from *Maddox* to *Elihu Hayes* and *Nathan Lord*, dated, *Dec.* 12, 1829, — and a deed from the latter to *Ivory Lord*, the other defendant, dated *April* 13, 1830. In this last deed, after a general description of the farm, was the following; — "being the right of equity of re- " deeming said farm sold to *Aaron Maddox*, by *Caleb Emery*, " deputy sheriff, which we purchased of him." The defendants

Legro *v.* Lord & al.

also introduced a deed from *Benjamin Lord* to *Ivory Lord,* his son, dated *Dec.* 21, 1829, which was for the expressed consideration of *one dollar,* and ran thus : " All my right, title and claim " to redeem the farm in *Lebanon,* whereon I now live, from a " sheriff's sale, made in *April* last, by *Caleb Emery,* deputy " sheriff, to one *Maddox;* — and I hereby authorise said *Ivory* " *Lord to redeem said right in equity from said Maddox or his* " *assigns,* in the same way and manner as *I myself might have* " *done,* had this conveyance never been made ; — and I hereby " release and quitclaim to said *Ivory,* all right and interest which " I have in said farm ; — and I hereby constitute and appoint " him my attorney, to act and do every thing touching the pre- " mises, for me and in my behalf, as· fully in every respect as I " myself might do."

For the purpose of showing that the equity had been redeemed from the purchasers, under the *first sale,* the demandants offered to prove by parol, that *Benjamin* and *Ivory Lord,* on the 13th *of April,* 1830, went to *Elihu Hayes* and *Nathan Lord* with an amount of specie sufficient to satisfy their claims, and that *Ivory Lord* tendered the same to them and demanded a deed ; — that the deed from said *Hayes* and *Lord,* given that day to *Ivory Lord,* was made and executed to extinguish their title and effect *a redemption* of the equity and for no other purpose, and that such was the intention of all the parties. — They further offered to prove that the money tendered and paid to *Hayes* and *Lord,* was the money of *Benjamin Lord,* and that there was no consideration paid by *Ivory Lord* for the conveyance of *Benjamin Lord* to him.

But the *Chief Justice,* before whom the cause was tried, rejected this evidence, on the ground that parol proof was not admissible to control, explain or affect the deed to *Ivory Lord ;* or prove any trust or use, different from that stated in the deed of *Hayes* and *Lord* to *Ivory Lord.* And the question of the propriety of this ruling, was reserved for the opinion of the whole Court. If the evidence was improperly rejected, then the nonsuit which was entered by consent, was to be set aside and a new trial granted ; but if properly rejected, then the nonsuit was to be confirmed and judgment entered for the tenants.

*J. & E. Shepley* and *Burleigh*, for the plaintiff, cited the following authorities. *Leland v. Stone*, 10 *Mass.* 461; *Fowle v. Bigelow*, 10 *Mass.* 384; *Worthington v. Hilyer*, 4 *Mass.* 205; *Wallis v. Wallis*, 4 *Mass.* 136; *Lord Compton v. Oxenden*, 2 *Vesey, jr.* 264; *Erskine v. Townsend*, 2 *Mass.* 495; *Clark v. Wentworth*, 6 *Greenl.* 260; *Darling v. Chapman*, 14 *Mass.* 101; *Parsons v. Wells*, 17 *Mass.* 419; *Vose v. Handy*, 2 *Greenl.* 322; *Gray v. Jenks*, 3 *Mason*, 520; *Kelly & ux. v. Beers*, 12 *Mass.* 390.

*N. Emery*, for the defendants, cited 4 *Kent's Com.* 99 to 103; *Lockwood v. Sturdivant*, 6 *Con. Rep.* 373; 1 *Levinz.* 11; *Phillips v. Phillips*, 1 *Peere Williams*, 41; *Shephard's Touchstone*, 83; *Dexter v. Harris*, 2 *Mason*, 531.

MELLEN C. J. delivered the opinion of the Court at the ensuing *May* term, in *Oxford*.

In the decision of the question reserved, it is proper for us to consider the facts which the counsel for the demandant *offer-ed* to prove, in the same manner as though they *had been proved*; and the inquiry then is, whether on all the facts thus existing, as reported, the action is by law maintainable; if so, the nonsuit must be set aside. At the argument, the counsel frankly stated that he did not contend that parol evidence was admissible to contradict or vary the facts appearing on the face of the deed from *Hayes* and *Lord* to *Ivory Lord*, or in any manner control its construction; as by shewing that the money tendered by *Ivory Lord* was the money of *Benjamin Lord*, and that, so, a resulting trust was created; but merely for the purpose of shewing a tender made to *Hayes* and *Lord*, in due season, of the sum due to them; that is, within one year from the time *Benjamin's* equity of redemption was sold and conveyed by the officer to *Maddox*; contending at the same time, that such tender, of itself, and independently of any conveyance from *Hayes* and *Lord*, at once extinguished all their interest in the *equity of redemption*; and that thereupon the same was restored to, and became the property of *Benjamin Lord*, and was therefore rightfully seised and sold the *second* time on execution to the demandant, at the suit of *Benjamin's* cred-

itor, notwithstanding the previous conveyance from *Benjamin* to *Ivory;* because, as the demandant contends, *Benjamin* then being indebted, the deed was fraudulent and void as against creditors. This appears to be the ground and the essence of the demandant's objection to. the ruling of the presiding Judge, by which the parol evidence offered was excluded. — The facts of the case, arranged in order of time, are briefly these. *Benjamin Lord,* on the 15th of *July;* 1828, being then the owner of the demanded premises, conveyed the same in mortgage to *Messrs. Hayes and Cogswell.* On the 15th of *April,* 1829, the mortgager's equity of redemption was legally sold on execution and a deed thereof given to *Maddox;* who, on the 12th of *December,* 1829, conveyed the same to *Hayes* and *Lord.* On the 21st of the same *December, Benjamin Lord,* the mortgager, by his deed of that date, released to *Ivory Lord,* all his right, title and claim to redeem the demanded premises, " from the " sale made in *April* last;" and authorised the said *Ivory* to redeem said *right in equity* from said *Maddox* and his assigns; and also released all his, said *Benjamin's,* right and interest in the demanded premises. On the 13th of *April,* 1830, the day on which the tender was made, the said *Hayes* and *Lord* conveyed to *Ivory Lord* the " right in equity of redeeming said farm," (the demanded premises) " sold to *Aaron Maddox.*"

If the foregoing facts have not been disturbed, nor their effect destroyed by the proceedings on which the demandant relies, and the application of legal principles to them, the nonsuit must be confirmed. He claims title to the premises in question under a second sale of the *same equity of redemption,* made on the 25th of *December,* 1830, as the property of *Benjamin Lord.* Now, according to the deeds and dates before mentioned, what estate or interest of *any kind,* had *Benjamin Lord,* at that time in the demanded premises, or *legal* or *equitable* title or claim thereto? His *equity of redemption* was sold and conveyed to *Maddox* almost two years before; and his *right to redeem that equity of redemption,* it is contended, he had conveyed to *Ivory Lord,* above twelve months before; and that *both* those rights had been conveyed to, and vested in *Ivory Lord,* more than ten months before. By the 57th *section* of

*chap.* 60, of the revised statutes, a right in equity of *redeeming real estate mortgaged,* is made a subject of *attachment,* and of *sale on execution,* for payment of the debts of the mortgager; but the right, for one year, *of redeeming such equity of redemption,* when so sold on execution, *was not* liable to such attachment or sale, by any statute or principle of law, until *March* 4th, 1833. *Kelly & al. v. Beers,* 12 *Mass.* 387. Therefore, though *Benjamin Lord* might have been *insolvent* when he made the deed to *Ivory,* (though there was no proof, or offer of proof that such was the fact, nor does the report disclose any,) still he had an unquestioned right to convey whatever *was* conveyed by the deed to *Ivory,* without being impeached, on that account *only,* as acting the part of a fraudulent debtor. No creditor *can be,* in legal contemplation, defrauded by a mere conveyance made by his debtor of any of his property, which such creditor has no right by law to appropriate or even to touch by any civil process. This principle is perfectly plain, and its application is important in this case. It is also important to observe that the deed from *Benjamin* to *Ivory* is an *absolute* conveyance of all his right, which was the *right of redeeming* the *equity of redemption.*

In the above particular, the case at bar is distinguished from. that of *Reed v. Bigelow,* 5 *Pick.* 281, cited for the demandant. In that case, the Court, speaking of *Kelly & al. v. Beers,* say, " By the equity, the mortgager's whole *legal* estate passed; but " he had a right to *redeem that equity;* and when he assigns " this right by way of mortgage," (as was the case in *Reed v. Bigelow*) " he has a right to redeem it back again by perform- " ance of the condition. This *new* right, created by the *second* " mortgage, we think *attachable,* and may be *sold* on execution." No one will doubt the correctness of the above principle, or fail to perceive the manifest distinction, in an essential point, between *that* case and the one under consideration.

We would again observe, that it is contended by the counsel for the tenant, that all the rights which *Benjamin* had, he undertook to convey, and did convey, by his deed to his son *Ivory;* that though he had no *legal* estate in the premises, he had *one* equitable right, and *Hayes* and *Lord* had *another* ; and that *both*

these rights were acquired by *Ivory* and united in him on the 13th of *April*, 1830, according to the language of the two deeds. If such was the fact, and if the transaction was fair and in good faith, which terminated in this arrangement, then the cause seems clearly with the tenant; for though the right to redeem an equity of redemption is not liable to *attachment* and *sale* on execution, yet it is *assignable,* as was decided in *Bigelow v. Wilson,* cited in the argument. But it is contended that it appears from the very terms of *Benjamin's* deed to *Ivory,* that he was to act as the *attorney* and for the *benefit of Benjamin* in the redemption of the right in equity to redeem the mortgage, and that a *real sale* seems not to have been in the contemplation of the parties to that deed: — and it is further contended, that the deed was fraudulent, and that the demandant should have been permitted to introduce the evidence to prove the fraud, which, however, the presiding Judge excluded. This is a point upon which, for some time, our minds have been in a state of vibration, in consequence of the peculiar nature of the right which *Benjamin* conveyed to *Ivory ;* the same not being by law attachable, or saleable on execution. We now say, as we have before said, that the *mere* conveyance of this right, unconnected with other circumstances and events, could not be a fraud on creditors ; because creditors could not attach or seise it on execution. But if the money tendered and received, was the money of *Benjamin,* and the right was conveyed to *Ivory* with the intent and for the purpose of enabling him to *redeem* the *equity of redemption* in his own name, and for the further purpose of his *redeeming the mortgage* in his own name, and holding the estate secure from the creditors of *Benjamin,* and for his use ; pursuant to a fraudulent arrangement made between *Benjamin* and *Ivory,* we are of opinion that the creditors of *Benjamin* may prove the fraud, one of whom is the present demandant ; and such a fraud being proved, the effect must have been, that by the tender made to *Hayes* and *Lord* of the sum due, their rights at once were at an end, without a deed of conveyance from them, and the equity of redemption immediately was restored to *Benjamin,* and was lawfully seised and sold on execution and conveyed to the demandant by the officer. Such a

construction of such an arrangement, if fraudulently made for the purposes above-mentioned, is necessary to secure to honest creditors their rights, and prevent the triumph of intrigue, dishonesty and fraud.

From what we have stated, it is perceived that there must be a new trial; and to prevent further examination of any of the questions of law which have been discussed by the counsel, we would now observe that we can see nothing resembling a *merger*, as has been contended. It is difficult for us to discover the bearing, or, indeed, the meaning of the argument on this point. No doubt, as we have before observed, there was a union of the two *equitable* titles or rights in *Ivory*; at least as to all persons but creditors; but surely there is no union of the titles of the mortgagees and mortgager in the present case. The rights of the mortgagees have not been affected by any of the acts of the mortgager or his assigns or any creditor of the mortgager, either in respect to the *equity of redemption* or the *right in equity of redeeming the same*. The mortgage remains in full force : and with that title the demandant has no connection at present. " A merger takes place when there is a union of the freehold " or fee, and a term in one person, in the same right and at the " same time," — " an estate for years may merge in an estate in " fee, or for life : the merger is produced, either from the meet- " ing of an estate of higher degree with an estate of inferior " degree; or from the meeting of the particular estate, and " the immediate reversion in the same person." 4 *Kent's Com.* 98.

We are all of opinion that, for the reasons we have assigned, there must be a new trial.

*Nonsuit set aside and new trial granted.*