# CASES DECIDED

# MARCH TERM, 1890.

## LAMAR et al. v. SHEPPARD.

1. Under the allegations in the bill and the evidence at the trial, no case was made for using rents which accrued within twelve months after the tax sale, to supplement or piece out the cash tendered for the purpose of redemption.

2. A tender of the amount of purchase money at a tax sale, without also tendering the premium allowed by law, will not accomplish redemption. And for the purchaser to name a larger amount than he was entitled to, while it would dispense with production of the money tendered, would not dispense with full readiness to pay at the time of offering to redeem.

3. The affidavit for a warrant to evict a tenant holding over after failing to pay rent when due, need not specify the amount of the rent unpaid.

4. Though the warrant issued by the county judge be returnable on its face to the county court, yet if it be actually returned to the superior court, it is sufficient, and the latter court may entertain jurisdiction to try the issue formed by the counter-affidavit.

March 10, 1890.

Rents. Taxes. Redemption. Tender. Sales. Pleadings. Practice. Jurisdiction. Before Judge FORT. Sumter superior court. April term, 1889.

On May 31, 1883, two tax executions against George Lamar were levied on certain real estate, and on the first Tuesday in July thereafter, the property was sold under them to Sheppard for $15, and a sheriff's deed was made to him. After paying off the executions, $1.55 was left in the sheriff's hands. Lamar was then confined in jail on a criminal charge, and he there remained until the succeeding autumn, when he was taken

to the penitentiary and there kept until April 15, 1887, when he returned and found his wife, Cherry, and her minor children, in possession of the property, and Sheppard claiming title to it. On June 4, 1887, before the judge of the county court Sheppard made affidavit that the property belonged to him and was rented by the week by Cherry Lamar; that she was required to pay the rent (the amount not being set forth), which was then due and unpaid, but she refused to pay it or quit possession, which had been demanded of and refused by her; and that she was holding over and beyond the time for which the premises were rented. Thereupon a dispossessory warrant was issued, returnable to the July term of the county court. George Lamar filed his bill for injunction against Sheppard and the sheriff, for cancellation of the sheriff's deed, and for judgment against Sheppard for whatever rents, issues or profits he might have collected out of any tenant he had placed on the premises. On March 5, 1888, Cherry Lamar filed her counter-affidavit with bond, denying that the property belonged to Sheppard, or that she rented from him or owed him any rent, or that she was holding beyond her term. By consent, the case thus made and the case made by the bill were tried together, separate verdicts to be taken, without prejudice as to rights of exception, etc. The bill alleged that the property was set apart in 1874 to Lamar as head of a family, and was worth $500; that he has but little knowledge or business experience, and neither he nor his wife can read or write, she being old and ignorant; that within twelve months after the sale of the property (to which he had had no opportunity to attend after he was put in jail), she went to Sheppard and proposed to redeem it under the law, but he refused to allow her to do so and informed her that it would take $50.00 to redeem it; that complainant and his wife are ready now to

pay the amount actually paid by Sheppard and the expense incurred in the matter, with interest and commissions, should the court hold that they are liable for the same, and they now make this a continuing offer; that they are poor, and all they have beyond this property is not worth over $100.00, and she has not been able to pay such an exorbitant price as that demanded by Sheppard, who, acting under his void title, has placed a cabin on a portion of the lot so as to intrude himself into possession of as much as he could, and is collecting rents on the same; and that while complainant was in jail, Sheppard fraudulently extorted from Cherry Lamar certain rents which were never due by her, and complainant has been in possession and control of the premises since his return, and Cherry owes no rent even if Sheppard's claims were just; and that the sheriff's deed was a cloud upon the homestead title, etc.

In his answer Sheppard alleged, among other things, that the property was worth not more than $50.00 or $60.00, and consisted of an acre or less of land, an old house with a large hole in the roof, unfit for use and liable to fall down, with no fences or enclosures; that long before the tax sale, Lamar had been convicted of larceny and sentenced to the chain-gang or to pay a fine of $35.00, and at his earnest solicitation Sheppard paid the fine, taking as security a mortgage on the house and lot, and for this reason alone bought at the sheriff's sale, hoping to better secure the amount Lamar owed him; that though Lamar was in jail, his attorney knew of the tax executions and of the indebtedness to Sheppard, and voluntarily dismissed a claim filed by Cherry Lamar under the pretended homestead; that nobody, during the twelve months after the sheriff's sale or since, has tendered Sheppard any amount to redeem the property, but he has many times asked Cherry Lamar to redeem it, and she has invariably replied that it rightly and justly

belonged to him; that after the twelve months expired, he went into possession and erected three houses with other improvements to the amount of $450.00, Cherry and her family occupying one of them and recognizing Sheppard as landlord; and that shortly before the issuance of the dispossessory warrant, they became defaulters, etc.

On the trial, the testimony for the Lamars tended to show that, within twelve months after the tax sale, two distinct tenders were made to Sheppard, one by Henry Harris at the request of George Lamar, and the other by Cherry Lamar, and that in both instances Sheppard had refused and said it would take $50.00 to redeem. Harris had $15.00 in his pocket, which he was ready to pay but did not take out; Cherry Lamar similarly had $16.00 obtained from her son, which she offered to pay but did not produce because Sheppard required $50.00. While George Lamar was in jail, Sheppard threatened to sell the property for what George owed him, and Cherry asked him not to do so, promising to make the money and pay it; and she and her children worked hard to do so but failed, she paying rent all the time, although he had told her he would let her stay in one of the houses he built and charge her no rent. She could not tell how much she paid in all; she washed for him every week her husband was gone, and the washing was worth over fifty cents per week. After putting up the three houses, Sheppard told her he did not want the place, all he wanted was his money back. When the dispossessory warrant was sued out, George Lamar was living on the place and had charge of it, though he had not paid any rent; "they" were paying $1.50 rent by the month.

Sheppard and another witness gave testimony tending to prove the allegations of the answer. He denied that he had asked $50 for redemption; and stated that the

washing done for him by Cherry Lamar was worth about as much as the rent for the old house. He erected the improvements in the fall of 1884, and the three houses he built are worth six or seven dollars per month for rent.

The jury found in favor of Sheppard in both cases; and answered in the negative the separate question of fact, whether George or Cherry Lamar, or the lawful agent of either, tendered to Sheppard the amount for which the property was sold at the tax sale, with ten per cent. premium thereon, within twelve months after the sale. The Lamars moved for a new trial on the following grounds :

(1–2) Verdict contrary to law and evidence.

(3) Error in charging that unless it was shown that Cherry Lamar tendered to Sheppard the full amount of the tax sale, with ten per cent. thereon, the jury should find for Sheppard; the Lamars insisting that the rents paid by Cherry Lamar during the twelve months allowed for redeeming the property, being largely more than sufficient, when added to the amount tendered, to cover the amount brought by the property, should have been applied to the redemption.

(4) Error in refusing to charge (a) that if George Lamar, by any authorized agent, or Cherry Lamar, within twelve months after the tax sale, tendered to Sheppard the price of the tax sale with ten per cent. thereon, that was under the law a good tender and the jury should so find; (b) that if George or Cherry Lamar, or any authorized agent for them, approached Sheppard for the purpose of redeeming the property, within the twelve months, and told him that was their purpose and they were then prepared to do so, and Sheppard notified them or their agent that he would not take less than $50, then a further tender would be dispensed with, provided it appeared that Sheppard notified them that

he would not take the amount offered, made no point on the amount being less than the tax sale and ten per cent. thereon, but refused to take less than $50 and so notified them, and provided further that the $50 was much more than the tax sale purchase and ten per cent. thereon ; (c) that if at the time of tender Sheppard had in his possession rents he had collected on the property, it might be taken in connection with the amount of money tendered by Cherry, or any agent of George Lamar, if the jury believed any such tender had · been made ; (d) that Sheppard would not be entitled to the rents prior to the expiration of twelve months from the tax sale, but that would be money in his hands to be applied to the redemption of the place upon a tender being duly made within the twelve months.

(5) Error in refusing to dismiss the warrant, the motion being upon the grounds (a) that the affidavit therefor specified no amount of rent and no time when it became due ; and (b) because the warrant, being issued by the judge of the county court, was made returnable to the county court, whereas it should have been made returnable to the superior court.

(6) Error in not remanding the warrant, on motion, to the county court to which it was made returnable by the judge issuing it ; it appearing that the warrant had never been returned or tried in said court, and that no appeal therefrom to the superior court had been entered by either party.

The motion was overruled, and the Lamars excepted.

Hinton & Cutts, for plaintiffs in error.
Simmons & Kimbrough, *contra.*

Bleckley, Chief Justice.

, The main question in the case is whether rents paid by Mrs. Lamar to Sheppard, during the first year after the tax sale at which Sheppard purchased, can now be treated as having been paid towards redeeming the prem-

ises, so as to supplement the amount of cash tendered in that year for the purpose of effecting redemption. For aught that appears, both parties acted upon the *bona fide* belief that Sheppard was entitled to the rents for that year. He exacted them if at all as matter of right, and Mrs. Lamar paid them voluntarily and without any claim that they should be treated as paid otherwise than in virtue of the relation of landlord. and tenant. She recognized that relation and acted upon it. Moreover, she did not pay in cash but in labor, and very probably, if she had offered to redeem the property in labor, the offer would not have been acceptable. It was her legal right to occupy the premises during the first year after the tax sale without paying rent, and no doubt she agreed to pay and did pay in ignorance of law. But there is no evidence that Sheppard was not equally ignorant of law in receiving payment. Under these circumstances it is doubtful whether the rents could be recovered back, had they been paid in cash. Code, §3121. But grant that they could be recovered back, it does not follow that the law would arbitrarily apply them to effectuate the right of redemption, when neither of the parties had any such application in view at the time of the transaction, and when the right to make such application was never claimed until after the time for redemption had expired. Furthermore, to treat the property as redeemed by these rents together with the tender made of a less amount than was due would not put the parties *in statu quo*. For Sheppard, supposing himself to be the absolute owner, has made improvements on the property, and there is no offer to account or pay for these improvements as a means of protecting him against loss. How could the law now take hold of these rents and apply them differently from what the parties themselves intended when they were paid and received, no claim for such application having been made until it

was too late to insist upon the right of redemption? Certainly there was no strict legal redemption, and in order to substitute therefor an equitable redemption, it should be done on conditions which would be equitable to both parties.  One of these conditions, it seems to us, would necessarily involve compensating Sheppard for his improvements.  It does not appear that any claim for the rents to be so applied was set up before the improvements were made.  In *Jones* v. *Johnson*, 60 *Ga·* 260, the question of applying the rents to redemption was raised and the right insisted upon before the period for redemption had expired.  Here the sale was in July, 1883, and the question was made at the trial for the first time.  Even the bill, which was filed in June, 1887, does not set up this claim for application of the rents. It alleges nothing to that effect, but avers tender of the money within the twelve months, and repeats and continues the tender, thereby admitting that the whole amount remained unpaid when the bill was filed.  It seeks a decree for some rents alleged to have been collected by Sheppard, but does not intimate that they should be used to supplement the cash tendered so as to raise the tender to the requisite amount.  According to the bill, the amount tendered was sufficient without help from any rents whatsoever.

2. As to the two tenders relied upon, one made by Mrs. Lamar and the other by Harris at the request of Lamar himself, neither of them, according to the evidence, was sufficient in amount to effect redemption, the sum paid at the tax sale being $15.00 and the ten per cent. premium thereon amounting to $1.50, raising the aggregate to $16.50.  Neither of these parties tendered more than $15, nor did either of them have at the time more than $16.  If Sheppard said it would take $50, that would have excused the production of the money, had the person making the tender been possessed

of as much as $16.50 that could have been produced. But we see not how it could render a tender of $15 or even $16 sufficient, when $16.50 was the amount required to redeem according to law. What the property brought at the tax sale was no secret in the keeping of Sheppard, and it is not suggested that Mrs. Lamar or Harris was dependent upon him for information as to that fact. They seem to have known it. But what they did not know, or did not regard if they had knowledge of it, was their legal duty to tender ten per cent. premium in addition to the $15. They simply undertook to make a tender without being prepared to comply with the law, and it cannot be said to have been the duty of Sheppard to aid them by calling their attention to his legal rights. It does not appear that they were deterred from tendering $1.50 more than they did tender by his declaration, if he made it, that it would require $50. They, knowing what the property brought at the sale, should have ascertained for themselves how much would redeem it, and should have made a tender of that amount. To tender a less amount was the same as making no tender at all. Code, §2478.

3. In the affidavit for a warrant to evict a tenant holding over, the amount of rent due and unpaid need not be specified. The grounds of the warrant are failure to pay overdue rent and refusal to surrender possession on demand. These facts being sworn to, the warrant may issue. Code, §4077.

4. That the warrant was issued by the county judge and made returnable to the county court, would not divest the superior court of jurisdiction to try and determine the issue made by the counter-affidavit. The code, §4080, expressly declares that the proceeding shall be returned to the superior court for trial by a special jury. This is the direction given by the statute, and the officer could obey it notwithstanding the direc-

tion in the warrant making it returnable to the county court. Even if the county court had jurisdiction by virtue of §295 of the code, the superior court certainly had jurisdiction also, and that the warrant was actually returned to the latter court was enough to justify the exercise of the jurisdiction.

There was no error in refusing to grant a new trial.

*Judgment affirmed.*