## BOURQUIN v. BOURQUIN.

1. A fiduciary is bound to exercise the diligence of a prudent man in preventing trust property in his charge from being sold for taxes.

2. If he advances the money for this purpose, he will be entitled to a lien for reimbursement.

3. If a trustee is unable to make such advance, or otherwise to obtain funds, by which to prevent a sale under a superior lien, he may apply to the chancellor for an order to sell or mortgage, so as to save at least a part of the corpus for the beneficiaries.

4. One who is under the obligation to pay taxes can not directly or indirectly purchase at a sale caused by his own default.

5. Where in consequence of a trustee's breach of duty the estate is sold for taxes, he can not, even after the expiration of the redemption period, acquire a title from the purchaser at the tax sale, good as against his cestui que trust. In equity the reconveyance will be treated as a correction of the wrong, leaving the property impressed with the original trust.

6. The principle that one without notice can convey to one with notice is subject to an exception where the transfer is back to him who was first guilty of the wrong in selling or permitting a sale to an innocent purchaser. When the property again vests in such wrong-doer, the original equity reattaches to it in his hands.

7. Pending the action of ejectment the property sued for was again sold at tax sale, and purchased by the defendant. Plaintiff within twelve months made a tender in compliance with the provisions of the Political Code, § 909:

(a) If the plaintiff at the time of the second tax sale was in fact owner of the property, he had the right to redeem it.

(b) Upon the owner making the proper tender the purchaser's interest in the land was at an end.

8. The verdict finding the land to be the property of the plaintiff was demanded by the evidence; but the defendant was not liable for rents or mesne profits during the four years the property was in the hands of the receiver.

Argued April 11, — Decided May 14, 1904.

Complaint for land. Before Judge Barrow. Chatham superior court. July 11, 1903.

By an ordinary warranty deed, imposing no duty and conferring no powers, Ketchum and Hartridge, on September 2, 1872, conveyed vacant lot No. 15 Elliott ward, in the city of Savannah, to Gugie Bourquin as trustee for Polignac Bourquin, a minor. Subsequently, at a date which does not appear in the record, Gugie Bourquin, out of his individual funds, erected thereon a house, and resided therein with his family, paying no rent to himself as trustee. Under a tax fi. fa. the lot was sold for city taxes in July, 1891, Polignac Bourquin, being then still a minor. The property was purchased by Kaufman, who was requested so to do

by the marshal, in order to protect Gugie Bourquin. According to the testimony there had been no previous conference between Gugie Bourquin and Kaufman, but, on the day after the expiration of the twelve months allowed for redemption, Kaufman conveyed the lot to Gugie Bourquin individually, the consideration named being the amount of the bid and the ten per cent. allowed by the statute. There was evidence that besides this Gugie Bourquin also paid to Kaufman the amount of certain tax fi. fas. against the same lot, which had been taken up and were then held by Kaufman, aggregating about $30. It appears that at the time of this reconveyance Polignac Bourquin was, and for some months, had been of age, but that he was absent from Savannah. On February 1, 1896, Polignac Bourquin, having reached majority, brought an action against Gugie Bourquin, his former trustee, for the recovery of the land and the rents since 1872. The defendant answered, setting up the tax sale to Kaufman and Kaufman's conveyance to him. He prayed that, if for any reason his title was defective, he be allowed compensation for the improvements put by him on the property. On April 4, 1898, Gugie Bourquin conveyed to his son Guillemain the property in dispute and other property, the expressed consideration being $400. Subsequently lot No. 15 was levied on under tax fi. fas. against Gugie Bourquin, and at the sale thereunder, on July 5, 1898, was purchased by Guillemain Bourquin. It appears that this tax fi. fa represented taxes on lot 15, standing in the name of Gugie Bourquin. Within the year Polignac Bourquin's attorney tendered to Guillemain Bourquin the amount of the bid and ten per cent. interest, and demanded a reconveyance. Guillemain declined to receive the money or to make the deed; whereupon the property, on a petition filed and served on May 12, 1899, was placed in the hands of a receiver; since which time the property has been in the receiver's possession. Guillemain was made "the party defendant" to the original action, having assented thereto in open court. It appears that there have been five previous trials, though what the verdicts in them were does not appear. (110 *Ga.* 440.) The verdict on this the sixth trial was in favor of the plaintiff for the land, and $135 per annum from February 1, 1892, to the date of the verdict (June 5, 1903), $1,530, less claim for improvements, taxes, and repairs, $1,239." The defendant made a motion for a new trial, on the general grounds, and

on many special grounds which involve the proposition that inasmuch as the evidence fails to show any collusion or fraud between Gugie Bourquin and Kaufman, in bringing about a sale, in bidding or in redeeming, a verdict could not be sustained on that branch of the case, nor was there evidence to warrant charges in reference to fraud.    As to the second sale it is contended that while there was a tender made by Polignac's attorney to Guillemain Bourquin for the purpose of redeeming from the second tax sale, the tender was not kept good; and that the verdict shows that the jury allowed the plaintiff mesne profits for the period during which the property was in the hands of the receiver.

*Travis & Edwards*, for plaintiff in error.
*George W. Owens*, contra.

LAMAR, J.    The trustee Bourquin failed to pay the taxes. The land was bought at tax sale by Kaufman.    Immediately after the expiration of the redemption year Kaufman conveyed to Bourquin in his individual capacity:    The latter and his representative now insist that as Kaufman was an innocent purchaser, he acquired a valid title to the trust property at tax sale, and could convey as good a title to Bourquin as he could have made to any one else.    A fiduciary is bound to exercise the diligence of a prudent man in protecting the property committed to his care. He is liable for negligence or bad faith in permitting its total destruction by a sheriff's sale, on the same principle that he is responsible for its partial destruction by waste or mismanagement. Civil Code, §§ 3170, 3200.    If the property is incumbered by a lien, he can not sit idly by and allow the estate to be sacrificed, but is bound to the exercise of diligence to prevent an improper foreclosure, or an improper or disadvantageous sale.    The trustee here could have advanced the taxes, and would have been entitled to a lien for his reimbursement.    Or if, as claimed, he had no individual or trust funds which could have been applied to that purpose, and if in the exercise of proper efforts he had been unable to borrow or to make other arrangements to pay or carry the taxes (*Printup* v. *Trammell*, 25 *Ga.* 240; *Thompson* v. *Thompson*, 77 *Ga.* 699 (4); Harrison *v.* Mock, 16 Ala. 616; Fishbeck *v.* Gross, 112 Ill. 208 (3); King *v.* Cushman, 41 Ill. 31 (4); Freeman *v.* Tompkins, 1 Strobh. Eq. (S. C.) 53; Burr *v.* Mc-

Ewen, 1 Baldwin, 154, 162), no reason appears why he could not have applied to the chancellor for an order to sell a portion of the lot, or to mortgage the entire property so as to save at least a part of the corpus for the beneficiary. Civil Code, §§ 4863, 3172. And if in spite of all his efforts it had been brought to the block, he was bound to have made like diligent efforts to redeem within the year. Good faith was his duty, and that alone is his protection. *Rogers* v. *Dickey*, 117 *Ga.* 821. He could not buy at his own lawful sale. For a stronger reason he could not buy at a sale brought about by his own unlawful conduct. He can not make a personal profit in dealing with the trust property either by act of omission or of commission. Civil Code, §§ 3010, 3183.

One who is under the obligation to pay taxes can not directly or indirectly purchase at a sale caused by his own default. Such attempted purchase will be treated as payment. Pol. Code, § 904. When, therefore, Bourquin individually took a deed to the trust property from Kaufman, he unintentionally corrected the wrong of which he had previously been guilty, and the original status was restored; and whether this deed is treated as a redemption before the expiration of the twelve months, or as an independent purchase after the redemption year, the title to the land wrongfully allowed to be sold for taxes was thereafter held by him under the trust as it existed prior to his breach of duty. "It would be a gross fraud in him to suffer the land to be sold for these very taxes he was bound to pay, lie by until the day of redemption was gone, buy in at the price of redemption the title of the purchaser, and then set up that title against that which he had undertaken to guard." Coxe *v.* Walcott, 27 Pa. St. 159; Dubois *v.* Campau, 21 Mich. 370. Nor would the result be changed by the fact that in addition to the bid and ten per cent. he paid Kaufman $30, the amount of other tax liens against the estate. In both cases he holds the redeemed property in trust for his son Polignac, but with a right to reimbursement for all sums expended in the protection of the property. If there was no collusion in the bidding or redemption, and if Kaufman was an innocent purchaser, this makes no difference. The principle that one without notice can convey to one with notice (Civil Code, § 3938) is subject to an exception where the transfer is back to him who was guilty of the actual or constructive fraud in first transferring, or in permit-

ting the property to be transferred to an innocent purchaser. When the title revests in the wrong-doer, the original equity will reattach to it in his hands. It has been so held in reference to the transfer of negotiable papers, and the same exception applies in regard to real property. Kennedy v. Daly, Sch. & Lef. 379 ; Clark v. McNeal, 114 N. Y. 287. See Andrews v. Robertson, 54. L. R. A. 673, and note. Compare Civil Code, § 3184. Were this not the rule, nothing would be easier than for a trustee to take advantage of his own wrong. It would only be necessary for him to make or permit a wrongful sale, in his individual capacity buy from the innocent purchaser, and then rely on the conveyance back as a shield with which to protect himself when sued for the very property which in the first instance through a breach of duty he allowed to be sold.

Pending suit there was a second tax sale ; but we find it unnecessary to pass on the question as to whether, since the adoption of the Code of 1895, § 778, trust property or property belonging to Polignac Bourquin could lawfully be sold under an execution against Gugie Bourquin as an individual, if aided by parol evidence that the execution was intended to represent taxes on that lot. *Kile* v. *Fleming*, 78 *Ga.* 5; *McLendon* v. *Horton*, 95 *Ga.* 60; *Burns* v. *Lewis*, 86 *Ga.* 599. Nor is it necessary to consider whether, in view of its recitals, it might be treated as an execution in rem ; nor to determine whether the sale was void because the levy was excessive. For whether the sale was valid or not, the tender by Polignac Bourquin of the bid and ten per cent. defeated whatever interest Guillemain Bourquin acquired by virtue of the tax sale. Where a creditor refuses to accept a proper tender, the claim is not extinguished, nor is the debtor harmed by the refusal. He still has his money. He may lend it or use it in business. If, however, he wishes to stop the running of interest, or to prevent the accrual of costs, he must keep the tender good. Civil Code, § 3728. But where the creditor has collateral, mortgage, or other form of security upon the property of the debtor, the failure to accept a legal tender discharges the lien which was intended to secure payment. When it has accomplished its purpose it ought not longer to be effective against him who has done all required by the law or the contract to cancel the mortgage or to regain possession of the pledge. The debtor offers the money for the

two-fold purpose of paying his debt and redeeming his property. The creditor may indeed decline to receive what is due, but he can not couple with his declination a refusal to cancel the lien or surrender that which thereafter belongs to the debtor free from the incumbrance.       The debtor may wish to use the property pledged. He may wish to sell that which is incumbered, and by the act of the creditor in refusing proper tender he is prevented from having and using his own.       It is evident that to allow such results would often work manifest hardship; and hence the rule, recognized by most of the authorities, is that upon the proper tender being made, while the original debt may continue, the lienor is entitled to a satisfaction of the lien or to be restored to possession of the property.       One of the ways for enforcing this right is the provision that the refusal of a proper tender discharges the lien.       The debt continues, "but the tender is equivalent to payment as to all things which are incidental or accessorial to the debt.       The creditor by refusing to accept does not forfeit his right to the thing tendered [money], but he does lose all collateral benefits or securities." Tiffany *v.* St. John, 5 N. Y. 314; *McCalla* v. *Clark*, 55 *Ga.* 53.       The same principle is applicable to a tender made by the owner for the purpose of redeeming from a tax sale, under the Political Code, § 909.       Thereafter the purchaser's incohate, qualified, or defeasible estate terminates. *Lamar* v. *Sheppard*, 84 *Ga.* 561 (2).       Burden *v.* Bean (Ark.), 12 S. W. 241; Legro *v.* Lord, 10 Me. 161; Poindexter *v.* Greenhow, 114 U. S. 270 (3).

Here, therefore, when Polignac tendered to Guillemain the amount of the latter's bid and ten per cent. added thereto, the plaintiff was entitled to possession of the land.       The defeasible title of the purchaser was at an end, and, whatever might be his rights as to the amount of the bid and penalty, he could no longer rely on the sheriff's deed as against him who offered to redeem and made the tender required by law.       The two tax deeds having been nullified, in the one case by the conveyance from Kaufman to the trustee, and in the other by the offer of the plaintiff to pay the redemption money within the time allowed by law, the defendant was without title, the plaintiff had made out a perfect paper title, and the verdict in his favor was demanded by the evidence.

The verdict against the defendant for mesne profits shows on its face that it included rent for the period that the land was in

the hands of the receiver.    Presumably he collected whatever rents accrued during that term.    At any rate there is nothing to suggest that the defendant was in possession.    A new trial must therefore be granted on the ground of the motion assigning error as to the improper allowance for mesne profits.    But as there have already been six trials of this case and there should be an end of litigation, we direct that the issue on the next trial be confined exclusively to a consideration of the question of mesne profits and the claim of set-off by the defendant.

   *Judgment affirmed in part, and reversed in part, with direction. All the Justices concur.*