USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2158

 WILLIAM H. HOWISON,

 Plaintiff, Appellee,

 v.

 JAYNE M. HANLEY,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. David M. Cohen, U.S. Magistrate Judge]

 Before

 Boudin, Circuit Judge,
 
 Aldrich, Senior Circuit Judge,
 
 and Lynch, Circuit Judge. 
 
 

 Daniel L. Cummings with whom Norman, Hanson & DeTroy was on
brief for appellant.
 Timothy H. Norton with whom Kelly, Remmel & Zimmerman was on
brief for appellee.

April 15, 1998

 ALDRICH, Senior Circuit Judge. In September 1995 James
R. McFarlane, Jr. ("McFarlane"), husband of defendant-appellant
Jayne M. Hanley ("Hanley"), filed a Chapter 7 bankruptcy petition
for which William H. Howison, plaintiff-appellee, was appointed
trustee. The trustee brought proceedings against Hanley, alleging
that McFarlane had fraudulently transferred to her his joint
tenancy in the couple's residence in Scarborough, Maine. McFarlane
had conveyed his interest to Hanley for no consideration in April
1993 as part of a refinancing, with the admitted purpose of putting
it beyond the reach of his creditors. He was legally insolvent at
the time.
 On defendant's motion, the reference was withdrawn from
the bankruptcy court and transferred to the district court, which
ruled that McFarlane had fraudulently transferred an "asset," viz.,
the excess value of his interest over the total of valid
encumbrances and his homestead exemption. Ruling that the
exemption could not be claimed because of fraud, the court valued
McFarlane's interest at $16,055, and entered judgment against
Hanley in that amount. Hanley contests the finding that there was
a fraudulent transfer, and, failing that, contests its measure. We
affirm.
 The parties do not dispute the residence's fair market
appraisal at the conveyance of $168,000. Nor do they quarrel with
the court's subtracting $2,983, for a needed septic system, and
$1,907.50, for removal of underground tanks. This left an
undisputed fair market value of $163,109.50. They also agree that
$140,535.21 in liens encumbered the residence. Without more, this
would have left $22,574.29 in equity. To facilitate the closing,
however, McFarlane and Hanley paid down a portion of the
encumbrances with $9,535.71 in cash, beyond closing costs. The
district court added this figure to the $22,574.29 to arrive at
$32,110 in equity. McFarlane's joint tenancy, transferred to
Hanley, was worth half, hence $16,055.
 The trustee sought to recover this amount from Hanley
pursuant to 544(b) of the Bankruptcy Code, which provides, "The
trustee may avoid any transfer of an interest of the debtor in
property . . . that is voidable under applicable law by a creditor
holding an unsecured claim . . . ." Here, the "applicable law" is
Maine's version of the Uniform Fraudulent Transfer Act (the "Act"),
14 M.R.S.A. 3571-3582, as well as its law as to exemptions. 
Under the circumstances, the district court found, McFarlane's
transfer was both constructively and actually fraudulent. See 3576(1) & 3575(1)(A). Accordingly, his creditors, and,
therefore, the trustee, could avoid the transfer, or obtain other
equitable relief. See 3578(1)(A) & (C).
 Hanley's first contention is that there was no
"transfer," as defined under the Act, and therefore no fraudulent
conveyance. "Transfer" means any parting with an "asset," while
"asset" means "property" of the debtor except to the extent that it
is encumbered or exempt. See 3572(2) & (12). "Property" means
"anything that may be the subject of ownership." See 3572(10). 
Her claim is that whatever property McFarlane conveyed did not
amount to an "asset" because its value was less than the
encumbrances and exemption combined. The merit of this turns,
first, on whether the court was correct to "add back" the $9,535.71
brought to the closing. If the $9,535.71 is not added to equity,
she contends, McFarlane's interest would be half of $22,574.29, or
$11,287.15. Because this is less than his $12,500 homestead
exemption, infra, the interest, supposedly, would not be an "asset"
and no "transfer" would have occurred. Hanley admits that the
$9,535.71 was "utilized to pay off, in part, existing encumbrances
on the Residence," but argues that the conveyance occurred before
the pay down, and therefore the encumbrances at the time of the
former totaled $140,535.21 rather than $130,999.50.
 We are unpersuaded; the conveyance and the refinancing
occurred on the same day and essentially as part of a single
transaction. Indeed, the parties stipulated before trial that the
conveyance and refinancing occurred "simultaneously." Further, it
is a matter of elementary economics that paying down encumbrances
on property has the contemporaneous effect of increasing equity in
that property. It was not clearly erroneous for the district court
to find as much. McFarlane's equity thus exceeded the $12,500
homestead exemption.
 Hanley next complains that even if this was a fraudulent
conveyance, the court incorrectly calculated its extent by refusing
to credit McFarlane with the exemption. She argues that McFarlane
could not have fraudulently transferred something that his
creditors could not have reached, so the extent of any fraudulent
transfer was only $3,555 ($16,055 minus the $12,500 exemption). 
She relies on Legro v. Lord, 10 Me. 161, 165 (1833), for the
proposition that "No creditor can be, in legal contemplation,
defrauded by a mere conveyance made by his debtor of any of his
property, which such creditor has no right by law to appropriate or
even to touch by any civil process."
 Since that decision, however, there has been an
opportunity for statutory changes. 14 M.R.S.A. 4422 provides:
 Exempt property.

 The following property is exempt from
 attachment and execution, except to the extent
 that it has been fraudulently conveyed by the
 debtor.

 1. Residence.

 A. Except as provided in paragraph B,
 the debtor's aggregate interest, not to exceed
 $12,500 in value . . . . .

 C. That portion of the proceeds from
 any sale of property which is exempt under
 this section shall be exempt for a period of 6
 months from the date of receipt of such
 proceeds for purposes of reinvesting in a
 residence within that period.

 Under this a debtor with homestead property worth $12,500
has three choices. He may do nothing, in which event his creditors
can take nothing. Second, he may transfer the property for full
value, in which event the $12,500 received in return will have a
homestead exemption attached, but that will clear in six months --
for the benefit of creditors -- if it is not reinvested in a
residence. If, third, he conveys for no value in return, for the
transferee to say there was no loss to his creditors is absurd.
 What this means is that the exemption, personal to the
debtor, did not follow the asset, and defendant must account.
 Affirmed.