IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 17, 2002 Session

## BEALE STREET DEVELOPMENT CORPORATION v. GEORGE MILLER, ET AL. and CURTIS CALVIN v. GEORGE B. MILLER

Direct Appeal from the Chancery Court for Shelby County
No. 99-0412-3     Robert A. Lanier, Circuit Court Judge, Sitting by Interchange

---

No. W2001-01133-COA-R3-CV - Filed March 20, 2003

---

This is a disagreement over the exercise of an option contract. The Appellant asserts that he was prevented from exercising his option. For the reasons stated below, we affirm the trial court's ruling that the Appellant never made an unconditional tender of the funds required to exercise the option, and thus did not properly exercise the option during its term.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert A. Wampler, Memphis, TN, for Appellant

Brian S. Miller, Memphis, TN, for Appellee

### OPINION

### Facts and Procedural History

This is a controversy over an option to purchase contained in the lease for the property located at 380 Beale Street ("the property") in Memphis. The property is owned by the Beale Street Development Corporation ("BSDC"). BSDC leased this property to Miller Memphis, Inc. in 1974. In 1987, a modification to this agreement gave Miller Memphis, Inc. an option to purchase the property. The option to purchase required Miller Memphis to pay off the mortgage and liens on the property. On December 1, 1996, George Miller ("Mr. Miller"), representative of the then administratively dissolved Miller Memphis, Inc., Curtis Calvin ("Mr. Calvin"), Kim Calvin Quinn, and BSDC signed a sub-lease agreement that also contained an option to purchase in favor of the sub-lessees, Mr. Calvin and Ms. Quinn. The signing of the sub-lease followed extensive negotiations between Mr. Miller and Mr. Calvin that included creating several drafts of their

agreement. This option to purchase gave Mr. Calvin four (4) years in which to exercise the option to purchase, either by paying $100,000.00 or by making four annual payments of $25,000.00 each. The money was to be paid "directly" to Mr. Miller either in cash or by cashier's check. The agreement required Mr. Calvin to assume the mortgage on the property. Both parties were aware that there were liens on the property at the time the agreement was signed, but their agreement did not specify whether Mr. Miller or Mr. Calvin would be responsible for the liens. This agreement had a commencement date of November 25, 1996.

Mr. Calvin asserts that he made repeated attempts to exercise the option but that Mr. Miller prevented him from doing so. Mr Calvin claimed that he first notified Mr. Miller of his intent to exercise the option in December of 1997. After notifying Mr Miller, Mr. Calvin hired an attorney in February 1998 to perform a title search and to handle the closing on the property. The title search revealed approximately $42,600 in taxes and other liens owed on the property. These liens became the sticking point in the transaction at a meeting that was held at Mr. Calvin's attorney's office in early March 1998 for the purpose of discussing closing on the property. Mr. Calvin claims that Mr. Miller refused to close because he would come away from the sale with no gain for himself unless Mr. Calvin paid the liens and taxes.

Mr. Miller, the Appellee, asserts that Mr. Calvin first attempted to exercise the option on December 27, 2000, approximately a month after the option had expired, and that December 27, 2000 was the first time Mr. Calvin produced any money for the purchase of the property. Furthermore, Mr. Miller asserts that Mr. Calvin breached the lease agreement of the parties, thus destroying the option to purchase as outlined in their agreement, by repeatedly making late payments and failing to maintain insurance as required by the lease. Mr. Miller claims that the meeting held at Mr. Calvin's attorney's office was to discuss these breaches and not to close on the property. Following the meeting Mr. Miller sent Mr. Calvin a letter canceling the option to purchase based upon Mr. Calvin's breaches of the lease. Mr. Miller asserted that the agreement between the parties was that Mr. Calvin would "stand in his place" with regard to his agreement with BSDC with Mr. Calvin assuming the mortgage and other responsibilities for the property.

On April 12, 2000, Mr. Calvin filed a Motion for Intervention in the Chancery Court of Shelby County seeking to intervene in a suit filed by BSDC against Mr. Miller and others. Mr. Calvin sought a declaratory judgment "as to the validity and enforceability" of the lease and option to purchase agreement he had signed with Mr. Miller and BDBC. Mr. Miller consented to Mr. Calvin's intervention and sought relief against Mr. Calvin. On June 20, 2000, a Consent Order Granting Motion for Intervention was entered. On December 27, 2000, Mr. Calvin deposited $25,000.00 with the court along with a notice stating he was exercising the option to purchase. On April 17, 2001 a hearing was held.

The chancellor entered an order detailing his findings on April 23, 2001. The chancellor declared that Mr. Calvin "never exercised his option under the lease by tendering directly to Miller the sum of $25,000.00 without condition other than the terms expressed in the lease" and "[a]t no

time within [the] four years of the lease has [Mr. Calvin] made an unconditional tender of a cashier's check for the sum in question."

Mr. Calvin timely filed an appeal to this Court and presents the following issue for our review:

> Whether the trial court erred in determining that Mr. Calvin should not be allowed to enforce the option to purchase set forth in the 1996 "Sub-Lease Agreement and Option to Purchase."

## Standard of Review

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" *Bank/First Citizens*, 82 S.W.3d at 727 (quoting *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

## Law and Analysis

The option to purchase in the parties' agreement was specific as to how it was to be exercised: "To exercise this Option, the Tenants must provide the Landlord with the sum of [$100,000.00] to be paid directly to the Landlord in cash . . . ." The agreement also provided that rather than submitting the whole $100,000.00, Mr. Calvin could pay $25,000.00 and make three subsequent annual payments of $25,000.00. The agreement also provided that "this [O]ption shall be revoked and/or terminated by Landlord where Tenants fail to honor or abide by the terms of this Option, or fail to comply with any term of the Lease Agreement."

The trial court found that Mr. Calvin was "aware, at the time of entering into the lease, that there were some liens on the property . . . ." Mr. Calvin and Mr. Miller met in early March, 1998 to discuss Mr. Calvin exercising the option. The trial court found that at this meeting

> the parties realized that there was a disagreement, as Calvin did not intend to pay the outstanding liens on the property and Miller refused to sell the lease unless Calvin would undertake to take the property with the liens as they stood. In other words, Miller refused to add a provision in the lease, to the effect that he warranted the title to the lease free of any liens other than the mortgage mentioned in the lease. Nothing in the lease required Miller to accept responsibility for paying off the liens on the leasehold property from the proceeds of the option payments. Therefore, Calvin never exercised his option under the lease by tendering directly to Miller the sum of $25,000.00 without condition other than the terms expressed in the lease

agreement. His offer was always conditional upon Miller undertaking payment of the liens.

After a review of the record before us, we agree with the trial judge and hold that Mr. Calvin never properly exercised his option as set out in the lease.

An option to purchase contract is a unilateral contract and "[i]ts transition into a contract to purchase can be effected *only by an unqualified unconditional acceptance* in accordance with the terms and time specified." *Jones v. Horner*, 260 S.W.2d 198, 199 (Tenn. Ct. App. 1953) (citation omitted) (emphasis added). In *Jones v. Horner*, Mr. Jones was Mrs. Horner's tenant under a lease. *Id.* at 198. The lease gave Mr. Jones an exclusive right to purchase the property during the term of the lease and stated that "he may exercise [the option] by payment or tender of the agreed purchase price." *Id.* Two days before the lease expired Mr. Jones wrote Mrs. Horner a letter in which he gave Mrs. Horner "notice" that he would exercise the option and would pay the purchase price upon receipt of a warranty deed. *Id.* at 198-99. The term of the lease expired without any payment or tender of the purchase price. *Id.* at 199. Mr. Jones sued Mrs. Horner for specific performance of the option to purchase after Mrs. Horner refused to take Mr. Jones' "notice" as a valid exercise of his option. *Id.* The chancellor ruled in Mrs. Horner's favor and the *Jones* court agreed. *Id.* The *Jones* court held that

> where the option by its express terms requires that the payment of the purchase money of a part thereof accompany the optionee's election to exercise the option, the making or tender of the payment specified, unless waived by the optionor, is a condition precedent to the formation of a contract to sell.

*Id.*

The option to purchase in the present case specifically provides that in order to exercise it, Mr. Calvin must have made a payment to Mr. Miller. Any notice that Mr. Calvin gave Mr. Miller of his intention to exercise the option to purchase did nothing towards actually exercising the option as only tender of cash or a cashier's check in the amount of either $100,000.00 or $25,000.00 would have been sufficient. Furthermore, as stated above, Mr. Calvin's exercise of the option must have been an "unqualified unconditional acceptance." Our review of the record confirms the trial court's finding that Mr. Calvin's offer "was always conditional upon Miller undertaking payment of the liens." During the cross examination of Mr. Calvin , the following exchange took place:

> Q. Mr. Calvin, getting back to those questions about your attempt to exercise your option in December of 1997 you testified that when you were asked by Mr. Wampler that Mr. Miller told you that to exercise your option you needed to pay him the $25,000, is that right?
>
> A. Yes, sir.

-4-

Q. And I think your testimony was that you told him that you wouldn't pay him the $25,000 to exercise it because you didn't believe that was the way to go?

A. Right.

Q. And is that true?

A. I told Mr. Miller that he wanted me to give him a $25,000 check in his hand and I was concerned about what may be attached to the property. So, I told him the proper way of doing a real estate closing is to have a closing attorney, and that's how that came about.


Mr. Calvin asserts that Mr. Miller prevented him from tendering the money and thereby waived the requirement of actual tender. Mr. Calvin presented testimony that Mr. Miller told Mr. Calvin that he had to "stop" Mr. Calvin from paying him the money because Mr. Miller's creditors would take it and leave Mr. Miller with nothing. Mr. Calvin contends that this rejection of payment waived the obligation for tendering the funds. Mr. Calvin points us to the following passage from *Memphis City Bank v. Smith*, 75 S.W. 1065, 1070 (Tenn. 1903):

> Under the facts stated, an actual tender was not necessary. In 25 Am. Enc. Law, at page 904, it is said: "The actual production of the money is not required, where the party is ready and willing to pay it, but is prevented by the creditors declaring that he will not receive it, or by his making any declaration equivalent to a refusal to accept if tendered." In Lamar v. Sheppard, 84 Ga. 561, 10 S. E. 1084, it was held that, where the purchaser at a tax sale named as a sum he was willing to receive an amount larger than he was entitled to by law, this would relieve the owner from the necessity of producing the money at the time of making the tender, but it would not dispense with the necessity of his being fully ready to pay at the time of his offering to redeem. In United States v. Lee, 106 U. S. 196, 202, 1 Sup. Ct. 240, 27 L. Ed. 171, it was said: "It is a general rule that, when the tender of performance of an act is necessary to the establishment of a right against another party, this tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused."

We note that cases cited in the above passage require the party be "ready" to pay and that a refusal of a tender does "not dispense with the necessity of his being fully ready to pay at the time of his offering . . ." The condition of being ready to pay before there can be a waiver of tender for refusal to accept payment was stated even more clearly in an earlier Tennessee case:

> The production of the money is dispensed with if the party is ready and willing to pay the sum, and is about to produce it, but is prevented by the party to whom it is to be paid declaring that he will not receive it; but his bare refusal to receive the sum proposed, and demanding more, is not alone sufficient to excuse an actual tender. The money must be actually at hand and ready to be produced immediately if it

should be accepted; as, for example, if it be in the next room, or up-stairs, or if it be a mile off, and can be borrowed and produced in five minutes, or, being a bank check, it be not actually drawn, it is not sufficient.

*Farnsworth v. Howard*, 41 Tenn. 215 (Tenn. 1860).

More recently, this Court stated:

A mere offer to pay does not constitute a valid tender; the law requires *that the tenderer have the money present and ready, and produce and actually offer it to the other party.* Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay . . . .

*Smith v. Futris*, No. W1998-00181-COA-R3-CV, 2001 WL 432497, *7 (Tenn.Ct.App. April 23, 2001) (quoting 74 Am.Jur.2d *Tender* § 7 (1974))(emphasis added).

An examination of the record before us shows that no actual tender was made during the four (4) year life of the option and that Mr. Calvin never had either $25,000.00 or $100,000.00 in hand ready to offer Mr. Miller. Mr. Calvin when asked if he had $25,000.00 during the time between December of 1997 and March of 1998, Mr. Calvin replied that he had the money "in my account." The only document in the record before us showing what Mr. Calvin had in his account at any time was a bank statement for the period of February 17, 2000 to March 17, 2000 showing that during that particular month sufficient funds were deposited that would enable Mr. Calvin to make a $25,000.00 payment. Mr. Eulyse Smith, the attorney that Mr. Calvin hired to do a title search on the property and a closing on the option, testified that at the meeting held in March of 1998 that "there was no money on the table." In response to the questions "did you hand him a check," and "[d]id you ever hand him cash," Mr. Calvin replied "[n]o . . . . I was willing and ready to" but that he "couldn't" because Mr. Miller told him he would not take it.

The trial court found that Mr. Calvin "never exercised his option . . . by tendering directly to Miller the sum of $25,000 . . ." We agree. The cases above and the statements of Mr. Calvin show that no actual tender was ever made. We cannot agree with Mr. Calvin that such a tender was waived because of Mr. Miller's refusal to accept the tender. The cases cited above show that as a condition to tender being waived, Mr. Calvin must have not only had cash or a cashier's check in hand, fully ready to pay Mr. Miller but also offer it to him. We find that the record does not preponderate against the trial court's finding that "[a]t no time during the four years of the lease has [Mr. Calvin] made an unconditional tender of a cashier's check for the sum [of $25,000.00]" and, thus, we affirm the ruling of the trial court.

## Conclusion

Because we find that Mr. Calvin did not make an unconditional, actual tender, all other issues are moot. For the foregoing reasons we affirm the ruling of the trial court. Costs are taxed to Appellant, Curtis Calvin, and his surety, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, JUDGE