# CHARLESTON.

JAMES KAY *v.* PINEY COAL & COKE COMPANY *et al.*

Submitted May 15, 1919.    Decided May 27, 1919.

1. CORPORATIONS—*Owner's Pledge of Stock to Corporation—Notice—Rights of Owner and Purchaser.*

Where the owner of corporate stock pledges it to a corporation to secure advancements made by it to another corporation in which he is interested, and such pledgee deposits such stock with a bank as collateral security for its indebtedness to such bank; and such bank, upon its debtor being adjudicated bankrupt, sells such stock to satisfy its debt, at which sale one of the active managing officers of the bankrupt corporation becomes the purchaser; and such officer so purchasing said stock had full knowledge at the time of the deposit of such stock with his company by the owner that it was only deposited for the purpose aforesaid, and became an endorser on the notes for which such stock is deposited with the bank as collateral, knowing that such stock is being used by his company in violation of the contract under which it holds the same, such managing officer so becoming the purchaser of such stock cannot hold the same against the true owner thereof after all advancements for which the stock was deposited as security have been paid.

Appeal from Circuit Court, Kanawha County.

Suit by James Kay against the Piney Coal & Coke Company, William D. Boyer, and others. Decree for plaintiff in part, with holding that defendant Boyer was the owner of certain stock as between himself and plaintiff, and plaintiff appeals.

*Revised in part.    Affirmed in part.    Remanded.*

*W. D. Payne* and *Geo. E. Price,* for appellant.

*Ira E. Robinson* and *Davis, Davis & Hall,* for appellees.

RITZ, JUDGE:

The question involved in this suit is the ownership of 250 shares of the stock of Piney Coal & Coke Company, of the par value of $25,000.00.

The Piney Colliery owned a tract of coal land at Stanaford in Raleigh county, which it leased to the defendant Piney Coal & Coke Company for the purpose of producing the coal therefrom. This company conducted operations upon the land for several years when it subleased the same, with the consent of the lessor, to the Piney Mining Company, who thereafter continued the production of coal from the land until the sale of its properties, as hereinafter referred to. The defendant Wm. D. Boyer owned $70,000.00 of the preferred stock, and $40,000.00 of the common stock of the defendant Piney Coal & Coke Company, and he was likewise an officer and director in that company. Twenty-five thousand dollars of this preferred stock held by him·was represented by certificate No. 35 for two hundred and fifty shares, which is the stock in controversy. In the year 1907 the Piney Coal & Coke Company, while it was engaged in carrying on the coal mining business, secured a loan of $20,000.00 from the Charleston National Bank, giving its note for that amount endorsed by the defendant Wm. D. Boyer, who pledged as further security for said note said 250 shares of stock. This note was curtailed from time to time until it was reduced to the sum of $6500.00. This company also secured another loan of $5000.00 from said bank upon the note of the defendant Wm. D. Boyer endorsed by his brother S. C. Boyer, and to further secure the payment of this $5000.00 note the said 250 shares of stock also stood as collateral. When the defendant Piney Coal & Coke Company made the sublease of the property to the Piney Mining Company, said last named company assumed all of the debts of the said Piney Coal & Coke Company, including the said sum of $11,500.00 above referred to due the Charleston National Bank. Upon the organization of the Piney Mining Company the defendant Wm. D. Boyer was very substantially interested therein, and he became president thereof. During the early part of its operations said Piney Mining Company sold its output of coal through the Maryland Coal & Coke Company, a selling agency with an office in Charleston, West Virginia. The Piney Mining Company, because of the fact that it had to pay its men twice a month, and

only received pay for the coal once a month, frequently had to call upon its sales agent for advancements to meet its payrolls. These advancements were made by the Maryland Coal & Coke Company from time to time until the Piney Mining Company, it seems, became indebted to that company in as large an amount as it cared to carry. Accordingly a request from the Piney Mining Company to advance money to meet one of its payrolls was refused by the Maryland Coal & Coke Company, and the Piney Mining Company was compelled to secure the funds from some other source. The New River & Ohio Coal Company was also a sales agent with its main office in the city of Charleston, and doing a very large business in the way of buying and selling coal. Upon application, it advanced to the Piney Mining Company the funds necessary to meet the pressing obligations of that company, and that company turned over the handling of its output to the New River & Ohio Coal Company with the understanding that that company would make advancements to it from time to time, as might be required, to meet its obligations, repaying itself out of the proceeds of the coal. This involved the taking up by the New River & Ohio Coal Company of the balance due the Maryland Coal & Coke Company by the Piney Mining Company. Shortly after this arrangement was made the New River and Ohio Coal Company desired to borrow some money from the Charleston National Bank, to be used in making advances to various coal companies for whom it was selling coal. At this time the officers of the New River & Ohio Coal Company were M. T. Roach, President, the plaintiff James Kay, Vice President, and one Guy M. Deane, Secretary and Treasurer. These three parties also constituted the board of directors, and had full and exclusive charge of the business of the New River & Ohio Coal Company. In fact it appears that they were the only parties who had any interest therein. The matter of buying the coal and selling the coal was entrusted to and was under the immediate charge of the president, M. T. Roach. The matter of conducting the company's financial affairs was under the immediate charge of the plaintiff James Kay and the said Guy M. Deane. When the New River &

Ohio Coal Company made application to the Charleston National Bank for this loan of $25,000.00, it was advised that that bank was already carrying the $11,500.00 above referred to for the Piney Mining Company, being the $6500.00 note of the Piney Coal & Coke Company and the $5000.00 note of Wm. D. Boyer, both of which notes, however, had been assumed by said Piney Mining Company; and that inasmuch as the New River & Ohio Coal Company was then selling the coal for the Piney mining Company, it was in a very much better position to collect these amounts than the bank, and before the bank would make any loan to the New River & Ohio Coal Company these notes would have to be taken up. At this time the New River & Ohio Coal Company had already made considerable advancements to the Piney Mining Company, but it likewise had a considerable amount of coal belonging to the said company which it had not accounted for. With a view to securing the loan from the Charleston National Bank it proposed that it would take up the $11,500.00 aforesaid and carry it as an advancement to the Piney Mining Company in the same way as other advancements, except that it would hold the stock of the Piney Coal & Coke Company as collateral to secure the same. This arrangement was satisfactory to the Piney Mining Company, and also to Boyer, the owner of the stock. It was then determined that the New River & Ohio Coal Company would endeavor to get the control of this 250 shares of stock, not only to secure the $11,500.00 for which it was then collateral, but also as security for any other advancements that might be made by the New River & Ohio Coal Company to the Piney Mining Company; or rather it seems that the first intention of the New River & Ohio Coal Company's officers was to get the absolute control of this 250 shares of stock so that it might pledge it and do what it pleased with it. Boyer, however, refused to consent to this arrangement, as is clearly shown by the evidence. He did agree, however, after considerable negotiations with him through Deane, the Secretary-Treasurer of the New River & Ohio Coal Company, and Roach, its President, that this 250 shares of stock might be held by the New

River & Ohio Coal Company, not only to secure the $11,500.00, but also to secure any other advancements made by that company to the Piney Mining Company. To carry out this arrangement Deane prepared an assignment or transfer of the stock from Boyer to the New River & Ohio Coal Company This asignment or transfer was absolute on its face, and purported to sell and transfer to the New River & Ohio Coal Company for a valuable consideration said 250 shares of stock, or whatever equity Boyer had therein. This assignment was sent to Boyer with a letter in which it was explained that the stock would be held by the New River & Ohio Coal Company to secure the $11,500.00 which it would take up in the Charleston National Bank, as well as any other advancements it might make to the Piney Mining Company, and that whenever the advancements made by it to the Piney Mining Company were fully repaid said stock should be returned to Wm. D. Boyer, the owner thereof. This was in accordance with Boyer's arrangement. When he received this letter and the form of assignment which he was requested to execute, he made an addenda to the assignment showing that the stock was transferred by him to the New River & Ohio Coal Company to be held by it in accordance with and under the terms of the letter of Guy M. Deane to him of March 5, 1913, which was the date of the letter above referred to transmitting the asignment to him for execution, and after making this addenda to the asignment he executed it and returned it to the New River & Ohio Coal Company. The New River & Ohio Coal Company then executed its note to the Charleston National Bank for the sum of $20,000.00, which note was endorsed by Roach, its President, and Kay, its Vice President, and with which note there was deposited as collateral the 250 shares of stock owned by Boyer in the Piney Coal & Coke Company above referred to, and also some other securities owned by Kay and Roach, as well as the two notes, one of the Piney Coal & Coke Company for $6500.00 and the other of Wm. D. Boyer for $5000.00, for which the stock had been theretofore held by the bank as collateral. On the same day that this collateral agreement was made with the bank

the bank executed an asignment to the New River & Ohio Coal Company transferring to it the two notes above referred to, together with the collateral held by the bank to secure the same, and the collateral agreement then executed by the New River & Ohio Coal Company to the bank re-transferred these two notes, together with all of the interest of said New River & Ohio Coal Company in the 250 shares of stock, to the bank as collateral to secure the payment of the $20,000.00 note. As before stated, certain collateral of Kay and Roach was also deposited with the note, and they executed the collateral agreement transferring the same to the bank. To this collateral agreement was attached the asignment made by Boyer to the New River & Ohio Coal Company, in which it was shown that the stock was to be held by the New River & Ohio Coal Company under the provisions of the letter of Guy M. Deane, of March 5, 1913, which letter provided that it would be held as collateral to secure any advancements made by that company to the Piney Mining Company and to be returned to Boyer whenever such advancements were repaid. This letter was not attached to the asignment turned over to the bank and attached to the collateral agrèement, but it was referred to by date, and, as above stated, this collateral agreement assigning to the bank the two notes above referred to, and all of the interest of the New River & Ohio Coal Company in the 250 shares of stock, and certain other stocks owned by Kay and Roach, was executed by the New River & Ohio Coal Company by Guy M. Deane, its Treasurer, and by James Kay and M. T. Roach in their individual capacities, in order to transfer their title to the stocks owned by them.

This $20,000.00 note thus secured was carried in the Charleston National Bank for about a year, at the end of which time arrangements were made with the Kanawha Valley Bank to make a loan of $25,000.00 to the New River & Ohio Coal Company, from the proceeds of which was to be taken up the $20,000.00 loan at the Charleston National Bank. This loan was accordingly taken up at the Charleston National Bank and the securities surrendered to the New River & Ohio Coal Company. This 250 shares of stock, which had been as-

signed on the back thereof in blank by Boyer when he deposited it as collateral in the first instance to secure the debt of the Piney Coal & Coke Company, was deposited with the Kanawha Valley Bank under a collateral agreement that it should be held to secure the payment of the $25,000.00 loan made by that bank to the New River & Ohio Coal Company. The agreement under which Boyer transferred this stock to the New River & Ohio Coal Company was carefully concealed from the Kanawha Valley Bank, and it had no notice that the New River & Ohio Coal Company was not the owner of this stock, or at least was not fully authorized to use it as it pleased. The collateral agreement executed to the Kanawha Valley Bank provided that the stock should be held, not only as collateral to secure the $25,000.00 loan made at that time, but also as security for any other debts which the New River & Ohio Coal Company then owed, or might thereafter owe said bank. This stock remained with the Kanawha Valley Bank until the New River & Ohio Coal Company was adjudged bankrupt. At that time it owed the Kanawha Valley Bank about $32,000.00. Upon $20,000.00 of this $32,000.00 the plaintiff James Kay and M. T. Roach, the President of the Company, were endorsers. For the other $12,000.00 the bank held an assignment of some debts due the New River & Ohio Coal Company, and also held the 250 shares of Piney Coal & Coke Company stock above referred to, and some other stocks as security for all its indebtedness. It called upon Kay to take up the notes upon which he was endorser, and he did take up the $20,000.00 that he had endorsed, with the understanding and agreement with the bank that any balance remaining of the collateral which it held, after paying off the New River & Ohio Coal Company's debts to it, would be held by the bank for his benefit. The bank collected on the other securities held by it some $5000.00, leaving a balance of something like $7000.00 for which its only security was the 250 shares of stock owned by the defendant Boyer. Under an order entered by the Referee in Bankruptcy, the bank and the trustee in bankruptcy advertised the stock for sale. Before the sale was made Boyer's attorney observed the advertise-

ment, and at his request the day of sale was postponed until Boyer could be communicated with and be present at the sale, if he desired to do so. He came to Charleston on the day of the sale, or the day before, and had a conversation with the cashier of the Kanawha Valley Bank and the attorney for the plaintiff Kay, in which conversation these parties were informed of Boyer's interest in the stock. There is some contradiction in the testimony as to whether on not on this occasion they were shown the papers by which Boyer assigned the stock to the New River & Ohio Coal Company, some of the witnesses contending that at this time these papers were shown to Kay's attorney, and he contending on the other hand that he has no recollection thereof. This is not at all material, however, inasmuch as all of the parties agree that the defendant Boyer and his attorney on that occasion informed Kay's attorney and the cashier of the bank of Boyer's claim to the stock, but it was likewise admitted that if the bank had no knowledge of this claim at the time it took the stock as collateral its rights could not be affected, but the defendant Boyer on that occasion declared that he intended to hold Kay responsible to him if he lost the stock. Boyer was asked if he desired to bid on the stock at the sale, but replied that he had no money with which to make the purchase, and being advised that Kay would bid up to $12,500.00 on it replied that that was all right, that he would attempt to hold Kay for the value of the stock on account of its misappropriation by the New River & Ohio Coal Company. The stock was sold and was purchased by the plaintiff Kay for the sum of $12,-500.00. Of this sum the bank applied the sum of $7000.00 in round numbers to the discharge of the balance of its debt against the New River & Ohio Coal Company, and the remainder it turned over to the plaintiff Kay to be credited upon the debts of the New River & Ohio Coal Company that he had taken up from the bank, upon which he was endorser. The stock was assigned to Kay by the bank and by the trustee in bankruptcy, and turned over to his attorney. The defendant Piney Coal & Coke Company, however, refused to recognize Kay as the owner of the stock, and refused to trans-

fer the same to him upon the books of the company. The matter remained in this condition for some little time until an advantageous sale of the properties of the Piney Coal & Coke Company had been made, and Kay, desiring to participate in the distribution of the proceeds of this sale, brought this suit to compel the defendant Piney Coal & Coke Company to transfer the stock to him upon the books of the company, and recognize him as the owner thereof, and to pay to him any amount which the owner of said stock would be entitled to receive upon a disbursement of the proceeds of the sale of the company's property. An attachment was issued against the property of the company, and in order that the sale might not be interfered with, by agreement of the parties, there was deposited in a bank the sum of $45,000.00, out of which was to be paid whatever amount the owner of said stock would be entitled to receive whenever it was determined who was the real owner thereof, and the balance of said fund returned to defendant Boyer. Upon a trial of the case in the Court of Common Pleas of Kanawha County, it was held that the plaintiff Kay was the owner of the stock, and a decree entered directing the holder of the fund aforesaid to pay him about the sum of $40,000.00, which was the amount that the owner of said stock would be entitled to on a distribution of the funds arising from the sale of the company's property. An appeal was taken from this decree to the Circuit Court of Kanawha County, and upon a hearing in that court the same was reversed and a decree entered there finding that Boyer was the real owner of the stock, but that Kay was entitled to have refunded to him the sum of $12,500.00 paid by him for said stock at the sale thereof as collateral, with interest upon that sum from the date of the sale until paid, and decreeing the balance of said sum to be paid over to the defendant, Boyer. From this decree the plaintiff Kay prosecutes this appeal.

The above narrative does not cover all of the facts in connection with the transaction but indicates the successive steps leading up to the sale of this stock and the purchase thereof by the plaintiff Kay. There is certain testimony in the record

to which it is necessary to call particular attention, and to which consideration must be given in order to a correct determination of the rights of the parties. The plaintiff Kay swears that he did not know that there was any limitation upon the right of the New River & Ohio Coal Company to use this stock in any way it pleased. He does not contend that the said company owned the stock. He knew it was Boyer's, but he does contend that Deane, the Treasurer of the New River & Ohio Coal Company, informed him that the stock was turned over to that company to be used by it in any manner it chose to use the same. On the other hand, it is contended that he had full knowledge of the purpose for which this stock was delivered to the New River & Ohio Coal Company by Boyer. Roach, who was at the time President of the New River & Ohio Coal Company, testifies that upon his return to Charleston on the occasion that the arrangement was made by which Boyer executed the assignment, Kay and Deane advised him of the arrangement they were trying to make in order to secure a loan from the Charleston National Bank; that Deane had taken up with Boyer the matter of turning over this stock to the New River & Ohio Coal Company, but that Boyer had raised objection thereto, and requested him, Roach, to have a talk with Boyer over the long distance telephone, Boyer's residence being in Scranton, Pennsylvania, and see if he could not consummate an arrangement by which Boyer would agree for the New River & Ohio Coal Company to take up the $11,500.00 and hold this stock, not only as collateral to secure that sum, but any other advancements that the New River & Ohio Coal Company might make to the Piney Mining Company; that he did thereupon call Boyer over the telephone, and had a talk with him; that in that conversation Boyer agreed that he would be satisfied for the New River & Ohio Coal Company to take up the $11,500.00 and hold this stock, not only as security for that amount, but as security for any other advancements that the New River & Ohio Coal Company might make to the Piney Mining Company, said stock to be returned to him as soon as such advancements were repaid, and advised that this ar-

rangement should be put in writing. Roach says that after having this conversation and arrangement with Boyer, he communicated the same to both Kay and Deane, and that they both fully understood the agreement that he had with Boyer. This conversation, it appears, was had about the 7th of March, 1913. Deane had written a letter on the 5th of March, 1913, embodying substantially this arrangement. He then forwarded this letter to Boyer with the assignment to be executed by him, and it was executed after the changes being made therein, as above indicated, and returned by Boyer. Deane died sometime before the institution of this suit and his testimony was, of course, not available.

Boyer testifies that a short time after this arrangement he was in the City of Charleston, and while there called at the office of the New River & Ohio Coal Company, and had a conversation with the plaintiff Kay, in which he fully advised Kay of his ownership of this stock, and of the arrangement under which it was held by the New River & Ohio Coal Company, and that Kay at that time fully understood the same. Kay swears that he has no recollection of any such conversation. This conversation testified to by Boyer was before the stock was deposited as collateral at the Kanawha Valley Bank and while it was being held at the Charleston National Bank, as above indicated. Sometime after this, Kay admits that he tried to get Boyer to agree that this stock should be held as collateral for advancements made to another company in which Boyer was interested, but that Boyer refused to agree that it might be so held. Kay does not explain why he tried to make this arrangement if, as he contends, the New River & Ohio Coal Company had the right to do what it pleased with the stock. Another fact to be considered is that at the time of the bankruptcy of the New River & Ohio Coal Company the Piney Mining Company contended that it had fully repaid all advancements made to it, and that the New River & Ohio Coal Company had no right to longer hold said stock. On the other hand, the New River & Ohio Coal Company contends that there was a considerable balance due it by the Piney Mining Company at the time it went into bankruptcy. This

matter, however, is rendered entirely immaterial in view of the fact that a sum of money sufficient to meet any claim asserted by the trustees in bankruptcy was deposited to be held until the true status of the accounts between the parties. was determined.

The proof in this case is clear as to the rights or interests of the New River & Ohio Coal Company in this stock. The agreement under which it took it from Boyer is in writing, and this writing shows that it was to be held by that company as collateral security for any advancements made by it. to the Piney Mining Company, and to be returned to Boyer upon the repayment of such advancements. It is admitted that all of these advancements have been repaid so far as they are not contested, and that so far as the amount is contested funds have been deposited to repay the same should it be ascertained that the New River & Ohio Coal Company's contention is correct. For the purpose of this case, therefore, we can treat all of the advancements made to the Piney Mining Company as repaid, and it follows that the New River &. Ohio Coal Company is under obligation and duty, and was so at the time it went into bankruptcy, to return this stock to Boyer in accordance with the terms of this contract. There is no longer any debt for which the New River & Ohio Coal Company, or its trustee in bankruptcy, can hold this stock. The same has been fully discharged, and the only party, as. between that company and Boyer, who has any interest in the stock, is Boyer.

Kay claims, however, that he has a right to hold the stock against Boyer for the reason that he purchased the same at the sale thereof made by the Kanawha Valley Bank without knowledge, before it was deposited with that bank, that the New River & Ohio Coal Company did not have full and clear right to the stock. He says that at the time the stock was deposited with the Kanawha Valley Bank he had no knowledge or information that it was held by the New River & Ohio Coal Company only as security for advancements made by that company to the Piney Mining Company, but that he relied upon the statements made to him by Deane that the New

River & Ohio Coal Company had full power to do as it pleased with this stock, and to·use it in any manner that it chose, and that it was in reliance upon this information, and upon the belief that this security was good for the debt that he endorsed the notes; that he would not have endorsed these notes had he not believed that this $25,000.00 of stock was worth $25,000.00, and that it was security for the re-payment of said loans ahead of his liability as endorser. The Court of Common Pleas found with him on this state of facts, or at any rate entered a decree in his favor, and we must assume that it found the facts as contended for by him. The Circuit court, on a careful review of the evidence found the facts the other way, and we are now called upon to pass upon the matters involved between the parties.

Can the plaintiff Kay, under the facts proven in this case, say that he did not know of the limitations upon the rights of the New River & Ohio Coal Company to this stock? His duty as director, as Vice President, as one of the active managing officers, and one of the three parties solely interested in the New River & Ohio Coal Company called upon him to know what assets that company had, and by what title it held them. Here was a block of stock admittedly worth at least $25,000.00 which came into the possession of his company under a written agreement that it was to be held in a particular manner, and he asks us to believe that he did not know that there was any limitation upon his company's rights thereto. He asks us to believe that notwithstanding he signed the collateral agreement by which this stock was turned over to the Charleston National Bank, and to which was attached the transfer from Boyer to the New River & Ohio Coal Company, in which attention was called to the limitation under which that company held it, that he did not read this paper, that he simply relied upon his asociates to tell him what was in the papers which were laid out before him for his own perusal and information. While it is true that Kay did not sign the contract or assignment by which Boyer turned the stock over to the New River & Ohio Coal Company, he did sign the collateral agreement to which it was attached, and it

is straining credulity almost to the breaking point to believe that as careful a business man as he is shown to be did not read the papers, the muniments of title of his company to the very property which was transferred. But we are not left to infer his knowledge from the duty which he was under to inform himself. We have the direct evidence of Roach that at the very time the transaction was had Kay was fully informed as to the nature of it, and was a party to it, in fact, was one of the parties at whose instance he, Roach, consummated the arrangement with Boyer. In addition to this we have the direct evidence of Boyer that within a few months thereafter he advised Kay fully and completely as to how this stock was held by the New River & Ohio Coal Company, and found that Kay was already fully advised in regard thereto. We also have the evidence that notwithstanding Kay says he believed that his company had the full right to do as it pleased with this stock, to pledge it as it pleased, to treat it as if it owned it, and to make the stock liable for the company's debts ahead of his endorsement on the notes, he attempted to get Boyer to enter into an arrangement by which this stock should be deposited as collateral with the New River & Ohio Coal Company to secure advancements made by that company to another concern in which Boyer was interested. How inconsistent is this conduct with his statement that he believed his company had full power to pledge this stock as it pleased. If it had full authority to pledge it for any debt that Boyer did not have any interest in in the world, surely that authority would not be limited when it came to pledging it for a debt in which Boyer did have a personal interest. When we consider that the statement of Kay is uncorroborated by a single circumstance, but on the other hand is contradictory of what he admits to be his duty, of every circumstance proven in the case, of the direct testimony of the witnesses who are advised in regard to the transaction, we can not give to it the weight to which counsel contend it is entitled. While it is true the Court of Common Pleas found in his favor, still where that finding, as we see here, is against, not only the preponderance of direct testimony, but in con-

flict with all the circumstances surrounding the transaction, we cannot follow it.

Having reached the conclusion that Kay was fully informed as to the title by which his company held this stock, and its rights therein at the time it was deposited with the Kanawha Valley Bank, what then are his rights as a purchaser at the sale made by that bank? Admittedly the deposit of this stock at the Kanawha Valley Bank under the circumstances, and under the contract by which it was there deposited, was a gross breach of the duty which the New River & Ohio Coal Company owed to Boyer, and having so violated its duty to him it was under obligation to relieve this stock from the lien it had placed upon it, and turn it over to Boyer when the advancements made to the Piney Mining Company were settled. Kay says that he knew this stock had been transferred to the Kanawha Valley Bank and that he relied upon it as security for the notes which he endorsed at that bank. He also knew, as we find, that his company had no authority so to pledge it, and knowing this he was not warranted in relying upon it as security. When he became a purchaser at the sale made by the bank he knew that this stock was improperly in the hands of that bank. He knew that his company was under obligation to Boyer to return to him that stock, instead of allowing it to be held for a debt for which, as between him and Boyer, it was not properly pledged; and he also knew at the time the stock was pledged at the bank that it was being improperly pledged, as he was a party to the improper pledging of it to the Kanawha Valley Bank, because he says that he considered it as security liable to the payment of this debt ahead of his endorsement, so he must have known at that time that the stock was pledged, and he undoubtedly knew that his company did not have any right to pledge it. Admittedly, if the New River & Ohio Coal Company had bought in this stock at the sale, it would have been but a redemption of it, and it would have had to return the same to Boyer upon repayment of the advancements to the Piney Mining Company. Does Kay stand in any different situation? As an officer of the New River & Ohio Coal Com-

pany he knew that company had no right to pledge this stock to the Kanawha Valley Bank in the manner in which it did, and notwithstanding this knowledge he participated in the transaction. It was his duty as a director and an officer of the New River & Ohio Coal Company, not to make it a means of defrauding a party with whom it was dealing, but to see that it performed its contract. It is argued by plaintiff's counsel that he had no knowledge of the transaction, that he did not know the limitations upon the rights of the New River & Ohio Coal Company in this stock, and because of this lack of knowledge he was not bound to protect Boyer's rights therein. Upon this question we express no opinion, for the reason that it does not arise in this case. We cannot under the evidence hold that Kay did not have full knowledge at all times of Boyer's interest in this stock, without doing violence to our convictions arrived at after full and mature consideration of everything shown in the case.

The doctrine is invoked here by the plaintiff that even though Kay did have knowledge of the infirmity of the New River & Ohio Coal Company's title, he purchased this stock from a bona fide holder, to-wit, the Kanawha Valley Bank, and takes as complete title as that bank had. This contention might be sustained were it not for the fact that it was by Kay's own wrong, his individual, personal wrong, that this stock was improperly put out of the control of the New River & Ohio Coal Company, and there is no authority that one who actively participates in the perpetration of a fraud upon another can ever become the beneficiary thereof. *Bourquin* v. *Bourquin*, 120 Ga. 115; *Andrews* v. *Robertson*, (Wis.) 54 L. R. A. 673 and note. The plaintiff Kay argues that the entity which perpetrated the fraud upon Boyer was the corporation, and that he in endorsing these notes, and in purchasing this stock, was acting in his individual capacity, and not as a member of the corporation's board of directors, or as one of its officers. This may be true, but by whom did the corporation act? The corporation is a separate entity, but it cannot act except through its officers and agents, and can one of its intelligent, conscious agents commit a fraud or a wrong in

the name of the corporation, and then take advantage of the situation he thus creates for his personal benefit? We say not. The proposition would seem so clear that the citation of authority is unnecessary. There is some discussion of a similar question in the case of *Pollard* v. *Vinton*, 105 U. S., page 7, the discussion being at page 12 of the opinion. Also in the case of *Star Fire Ins. Co.* v. *Palmer*, 9 N. Y. Sup. Ct. Rep. 267. When Kay particiated in the deposit of this stock as collateral in the Kanawha Valley Bank he was not only committing a corporate wrong against Boyer, but he was committing a personal wrong against him. He cannot say that his company for whom he was acting is alone responsible for his wrongful acts, or for his participation in a wrongful act. It may be that his company would be liable for such acts committed by him in the performance of his duties as a director, but it is equally true that where he, on behalf of his company, commits a wrong against another, he cannot take advantage of that wrong for the protection of his personal interests.

Our conclusion in this case is that as between the plaintiff Kay and the defendant Boyer, the plaintiff is estopped to claim any interest in this stock. We will therefore reverse so much of the decree of the Circuit Court as directed the payment to Kay of $12,500.00 paid by him for the stock at the sale thereof as collateral, with interest thereon from that date; and will affirm the decree so far as it holds that Boyer is the owner of the stock as between him and Kay; and will correct it to the extent that it provides for the payment to Boyer of the balance remaining after the payment of the $12,500.00 to Kay, and decree that the whole of the money deposited be paid over to Boyer, and that he recover his costs in this Court, as well as in the Circuit Court, and the Court of Common Pleas against the plaintiff Kay; and remand the cause that the decree for the payment of the money under the control of the court below may be executed.

*Reversed in part.    Affirmed in part.    Remanded.*